IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**MISSISSIPPI STATE CONFERENCE OF THE**                              **PLAINTIFFS**
**NATIONAL ASSOCIATION FOR THE ADVANCEMENT**
**OF COLORED PEOPLE, THOMAS PLUNKETT, ROD**
**WOULLARD, and HOLLIS WATKINS, on behalf of themselves**
**and all others similarly situated**

**VS.**                                      **CIVIL ACTION NO. 3:11-cv-159 (DPJ) (FKB)**

**HALEY BARBOUR, in his official capacity as**
**Governor of the State of Mississippi, JIM HOOD,**
**in his official capacity as Attorney General of the**
**State of Mississippi, and DELBERT HOSEMANN,**
**in his official capacity as Secretary of State of the**
**State of Mississippi, as members of the State Board**
**of Election Commissioners; THE MISSISSIPPI**
**REPUBLICAN PARTY EXECUTIVE COMMITTEE;**
**THE MISSISSIPPI DEMOCRATIC PARTY EXECUTIVE**
**COMMITTEE; and CONNIE COCHRAN, in her official**
**capacity as Chairman of the Hinds County, Mississippi**
**Board of Election Commissioners, on behalf of herself**
**and all others similarly situated**                               **DEFENDANTS**

**MOTION FOR A TEMPORARY RESTRAINING ORDER**

COME NOW the plaintiffs, the Mississippi State Conference of the National Association for the Advancement of Colored People ("NAACP"), Thomas Plunkett, Rod Woullard, and Hollis Watkins, on behalf of themselves and all others similarly situated,[1] pursuant to 28 U. S. C. § 2284 and Fed. R. Civ. P. 65, and move the Court to issue a temporary restraining order enjoining

---

[1] Plaintiffs filed the case as a class action. However, plaintiffs have not filed a formal motion for class certification yet.

legislative elections using the current benchmark districts[2] until a three-judge district court is convened and affording the Legislature a chance to redistrict on the following grounds:

## I. THE FACTUAL BASIS FOR A TEMPORARY RESTRAINING ORDER.

1. The current legislative districts[3] were drafted and implemented in 2002 following the 2000 federal census and preclearance by the United States Attorney General pursuant to § 5 of the Voting Rights Act of 1965, as amended and extended ("VRA").[4] The 2002 Senate plan had a total population deviation of 9.30%[5], and the House plan had a total population deviation of 9.98%.[6] Neither plan contained a district with a population deviation greater than 5% or less than 5%. However, the Senate plan contained five (5) districts with a deviation between +4% and +5% and three (3) districts with a deviation between -4% and -5%. The House plan contained 39 districts with a deviation between +4% and +5% and 42 districts with a deviation between -4% and -5%. The 2002 plans were legislature plans and not court ordered plans.

2. The State did not experience a substantial increase in population during the decade (2000 to 2010). Mississippi's population was 2,844,658 persons in 2000.[7] The population grew

---

[2]The benchmark districts are the current legislative districts implemented by the Legislature and precleared by the United States Attorney General in 2002 with the 2010 census data applied to those districts.

[3]The legislative districts are the districts for both the Mississippi Senate and the Mississippi House of Representatives.

[4]42 U. S. C. § 1973c.

[5]See, Senate Summary attached to the Complaint.

[6]See, House Summary attached to the Complaint.

[7]See, Senate and House Summaries attached to the Complaint.

by only 122,639 persons to 2,967,297 persons by 2010.[8]  However, the population shifted within the State during the decade.

3.     The current total range of population deviation between Mississippi's most populous and least populous Senate districts is 39,422 persons.[9]  The ideal population for a Senate district is 57,063 persons.[10]  The maximum population deviation percentage for benchmark Senate districts is 69.08%.[11]  There are 14 Senate districts with a population deviation percentage greater than 5%[12] and 19 districts with a population deviation percentage less than 5%.[13]

4.     The current total range of population deviation between Mississippi's most populous and least populous House of Representatives districts is 32,677 persons.[14]  The ideal population for a House district is 24,322 persons.[15]  The maximum population deviation percentage for benchmark House of Representatives districts is 134.35%.[16]  There are 38 House districts with a population

---

[8] See, Census Fact Finder attached to the Complaint as Exhibit "A."

[9] See, Senate Benchmark attached to the Declaration of Thomas Plunkett as Exhibit A-1.

[10] See, Senate Benchmark attached to the Declaration of Thomas Plunkett as Exhibit A-1.

[11] See, Senate Benchmark attached to the Declaration of Thomas Plunkett as Exhibit A-1.

[12] Senate District Numbers 1, 6, 9, 10, 18, 19, 20, 25, 29, 30, 40, 43, 44, and 51.

[13] Senate District Numbers 7, 8, 11, 12, 13, 16, 17, 21, 22, 22, 23, 24, 26, 27, 28, 32, 36, 38, 48, and 50.

[14] See, House Benchmark attached to the Declaration of Thomas Plunkett as Exhibit A-2.

[15] See, House Benchmark attached to the Declaration of Thomas Plunkett as Exhibit A-2.

[16] See, House Benchmark attached to the Declaration of Thomas Plunkett as Exhibit A-2.

3

deviation percentage greater than 5%[17] and 58 districts with a population deviation percentage less than 5%.[18]

5.     Plaintiff, Thomas Plunkett, is a registered voter in one of Mississippi's most populous Senate districts and one of Mississippi's most populous House districts.[19] Mr. Plunkett's Senate district has a population deviation percentage of +37.14%, and his House district has a population deviation percentage of +19.23%.[20] The deviation in Mr. Plunkett's Senate and House districts dilute his vote, and he feels aggrieved by that dilution.[21]

6.     The NAACP is one of this nation's oldest and most vigilant civil rights organizations that protects the voting rights of its members. The Mississippi State Conference of the NAACP has members who are citizens and registered voters in Mississippi Senate districts and Mississippi House of Representatives districts that are over populated and under represented, including Senate District 1 and House District 25. The NAACP has an interest in protecting the voting rights of its members. As such, the organization has organizational or associational standing to represent and protect the

---

[17]House District Numbers 6, 7, 8, 10, 12, 15, 17, 18, 19, 29, 37, 40, 52, 56, 57, 58, 59, 60, 61, 62, 73, 74, 92, 93, 95, 99, 100, 101, 103, 104, 106, 107, 108, 109, 112, 114, 116, and 118.

[18]House District Numbers 5, 9, 11, 16, 22, 23, 24, 26, 27, 28, 29, 30, 31, 32, 34, 35, 36, 38, 41, 42, 43, 44, 46, 48, 49, 50, 51, 53, 55, 63, 65, 66, 67, 68, 69, 70, 72, 75, 76, 78, 79, 80, 81, 82, 85, 86, 87, 91, 94, 96, 110, 111, 115, 117, 119, 120, 121, and 122.

[19]Mr. Plunkett is a registered voter in Mississippi Senate District 1 and Mississippi House of Representatives  District 25.  See, Declaration of Thomas Plunkett.

[20]See, Declaration of Thomas Plunkett.

[21]See, Declaration of Thomas Plunkett.

voting rights of its members.[22]   See, *Texas Democratic Party v. Benkiser*, infra; *Common Cause/Georgia v. Billups*, infra.  Members of the NAACP are injured by the malapportioned legislative districts.[23]

7.   Primary elections for the Mississippi Legislature are scheduled for Tuesday, August 2, 2011 with run-off elections, if necessary, scheduled for Tuesday August 23, 2011, and a general election scheduled for Tuesday, November 8, 2011.[24] The qualification deadline for legislative candidates is Wednesday, June 1, 2011.[25]

8.   The Mississippi Legislature has been in session since January 4, 2011.[26] This is a 90 day session[27] that ends April 3, 2011.[28] The Legislature received the 2010 census data on February 3, 2011.[29] The Senate and House were required to redistrict by resolution after the census became

---

[22]The NAACP may bring an action on behalf of its members who have suffered a violation of their constitutional rights.  See, *N.A.A.C.P. v. State of Alabama*, 357 U. S. 449, 78 S. Ct. 1163, 2 L. Ed. 2d 1488 (1958); *Louisiana v. N.A.A.C.P.*, 366 U. S. 293, 81 S. Ct. 1333, 6 L. Ed. 2d 301 (1961); *Texas Democratic Party v. Benkiser*, 459 F. 3d 582 (5th Cir. 2006); *Common Cause/Georgia v. Billups*, 554 F. 3d 1340 (11th Cir. 2009).

[23]The Complaint.

[24]The 2011 Election Calender issued by the Mississippi Secretary of State which is attached to this motion and incorporated herein.

[25]The 2011 Election Calender issued by the Mississippi Secretary of State which is attached to this motion and incorporated herein.

[26]The 2011 Election Calender issued by the Mississippi Secretary of State which is attached to this motion and incorporated herein.

[27]See, Art. 4, § 36, Miss. Const. (1890).

[28]The 2011 Election Calender issued by the Mississippi Secretary of State which is attached to this motion and incorporated herein.

[29]See, Census Advisory which is attached to this motion and incorporated herein.

available.[30] A redistricting resolution does not have to be approved by the Governor. The task is accomplished "by joint resolution, by a majority vote of all members of each house..."[31] That is, the Legislature has satisfied the requirements of state law once a majority of the members of each house has approved the joint resolution.[32] However, the resolution must still be administratively or judicially precleared in order to become fully effective since Mississippi is a jurisdiction covered by § 5 of the VRA. *Allen v. State Board of Elections*, 393 U. S. 544, 89 S. Ct. 817, 22 L. Ed. 2d 1 (1969); *Smith v. Clark*, 189 F. Supp. 2d 503, at 507-508 (S. D. Miss. 2002) (three-judge court) (*Smith v. Clark I*).

    9.    In any event, the Mississippi House of Representatives passed a resolution redistricting the House of Representatives and sent it to the Senate which refused to concur with the resolution. Instead, the Senate tabled the House resolution and passed a resolution redistricting the Senate. The Senate sent its resolution to the House of Representatives. The House amended the Senate resolution by adding the House redistricting plan. The House then submitted the amended joint resolution to the Senate for concurrence. The Senate, again, refused to concur and invited a conference of the two legislative bodies. The House of Representatives declined the Senate's invitation. The Legislative redistricting efforts have stalled. There is less than one week remaining in the Regular Session of the Legislature. The next regular legislative session begins in January, 2012.

    10.    Plaintiffs request the three-judge district court to enter a preliminary injunction

---

[30] Art.13, § 254, Miss. Const. (1890).

[31] See, Art. 13, § 254, Miss. Const. (1890).

[32] See, Art. 13, § 254, Miss. Const. (1890).

enjoining elections for members of the Mississippi Senate and Mississippi House of Representatives under the benchmark (current) apportionment plans on grounds that the existing districts are severely malapportioned causing irreparable injury to the plaintiffs and there is no compelling state policy for the malapportionment.

## II.     THE STANDARD FOR GRANTING A TEMPORARY RESTRAINING ORDER

11.     This case involves a constitutional challenge to statewide legislative apportionment schemes for the Mississippi Senate and the Mississippi House of Representatives. A constitutional challenge to a statewide legislative apportionment scheme must be heard by a three-judge district court. *Armour v. State of Ohio*, 925 F. 2d 987 (6th Cir. 1991); *Page v. Bartels*, 248 F. 3d 175 (3rd Cir. 2001); 28 U. S. C. § 2284. However, a single judge may issue a temporary restraining order until a three-judge court can be convened. *Page v. Bartels*, supra, at 181, 185 (A single judge "*may grant a temporary restraining order* on a specific finding"); *Garcia v. Guerra*, 744 F. 2d 1159, at 1161 (5th Cir. 1984) ("After a hearing on July 26, 1982, the district court issued a temporary restraining order, restraining appellees from holding the consolidation election until a three-judge panel could be convened to decide the issue"); *McDonald v. McLucas*, 371 F. Supp. 837 (S. D. N. Y. 1973) (temporary restraining order issued until three-judge court could be convened); *Hicks v. Pleasure House, Inc.*, 404 U. S. 1, 92 S. Ct. 5, 30 L. Ed. 2d 1 (1971) (per curiam). See, also, *Moye v. Conner*, 329 F. Supp. 1255 (N. D. Fla. 1971) (temporary restraining order issued by single judge until a three-judge court could be convened). The single judge considering a request for a temporary restraining order must still consider the request under the preliminary injunction standard. See, *Page v. Bartels*, supra.

### III.     THE STANDARD FOR GRANTING A PRELIMINARY INJUNCTION

12. The standard for considering a motion for preliminary injunction in the Fifth Circuit was established in *Canal Authority of State of Florida v. Callaway*, 489 F. 2d 567 (5th Cir. 1974). That standard has come to be known as the *Canal Authority* factors. Those factors are: (1) whether the plaintiffs have established a likelihood of success on the merits; (2) whether the plaintiffs will suffer irreparable injury if the injunction is not granted; (3) whether the threatened injury to the plaintiffs outweigh any threatened harm the granting of an injunction may cause the defendants; and (4) whether granting a preliminary injunction will disserve the public interest. *Canal Authority of State of Florida v. Callaway*, supra; *Chisom v. Roemer*, 853 F. 2d 1186 (5th Cir. 1988), *rev'd on other grounds*, 501 U. S. 380, 111 S. Ct. 2354, 115 L. Ed. 2d 348 (1991).

#### a.     The Plaintiffs Have Established a Likelihood of Success on the Merits.

13. The first *Canal Authority* factor is whether plaintiffs have established a likelihood of success on the merits. Plaintiffs' claim is a constitutional malapportionment claim. The record evidence supports this claim. The basis for the claim is that the population deviation in the benchmark districts following the 2010 census exceeds constitutionally acceptable levels. Essentially the current benchmark districts for both the Mississippi Senate and Mississippi House of Representatives greatly exceed 10% population deviation. The current deviation establishes a *prima facie* constitutional malapportionment claim. See, *Reynolds v. Sims*, 377 U. S. 533, 560-61, 84 S. Ct. 1362, 1381, 12 L. Ed. 2d 506 (1964); *Wyche v. Madison Parish Police Jury*, 635 F. 2d 1151, at 1158 (5th Cir. 1981); *Brown v. Thomson*, 462 U. S. 835, at 842-843, 103 S. Ct. 2690, at 2696, 77 L. Ed. 2d 214 (1983). "If a population deviance exceeds 10%, it constitutes a *prima facie* case of invidious discrimination that requires the [legislature] to prove a legitimate reason for the

discrepancy." *Fairley v. Hattiesburg, Mississippi*, 584 F. 3d 660, at 675 (5th Cir. 2009). Once a *prima facie* case of malapportionment is established, the evidentiary burden shifts to the state to prove the "justification for the deviation." *Moore v. Itawamba County, Mississippi*, 431 F. 3d 257, at 259 (5th Cir. 2005 (per curiam). The total deviation in House districts is 134.35%. The total deviation in Senate districts is 69.08%. A total of 96 House districts and 33 Senate districts exceed ± 5% deviation.[33] There is no state policy which justifies this deviation. The Mississippi Legislature tacitly admitted the deviation is unconstitutional when the House and Senate adopted separate redistricting plans. Consequently, plaintiffs have established a likelihood of success on the merits on their constitutional malapportionment claim.[34] *Reynolds v. Sims*, supra; *Wyche v. Madison Parish Police Jury*, supra; *Brown v. Thomson*, supra; *Fairley v. Hattiesburg, Mississippi*, supra; *Moore v. Itawamba County, Mississippi*, supra.

      **b.**    **The Plaintiffs Will Suffer Irreparable Injury if the Injunction Does Not Issue..**

14. The second *Canal Authority* factor the court must consider is whether the plaintiffs will suffer irreparable injury if an injunction does not issue. "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Beacom Theatres, Inc. v. Westover*, 359 U. S. 500, at 506-507, 79 S. Ct. 948, , 3 L. Ed. 2d 988 (1959). A voter is injured and denied the right to vote "by a debasement or dilution of the weight of [his or her] vote just as effectively as by wholly prohibiting the free exercise [thereof]." *Chisom v. Roemer*,

---

[33] The percentage of House districts exceeding ± 5% deviation is 78.69%, and the percentage of Senate districts exceeding ± 5% deviation is 63.46%.

[34] In 1991, a three-judge district court found Mississippi's House districts with a total deviation of 110.124% and Senate districts with a total deviation of 42.31% to be malapportioned. *Watkins v. Mabus*, supra.

9

supra, at 1189, quoting, *Reynolds v. Sims*, 377 U. S. at 555, 84 S. Ct. at 1378, and citing, *Sampson v. Murray*, 415 U. S. 61, 70, 94 S. Ct. 937, 943, 39 L. Ed. 2d 166 (1974). However, "[t]he possibility that ... other corrective relief will be available at a later date, in the ordinary course of litigation... weighs heavily against a claim of irreparable harm." *Chisom v. Roemer*, supra, at 1189, quoting, *Reynolds v. Sims*, 377 U. S. at 555, 84 S. Ct. at 1378, and citing, *Sampson v. Murray*, 415 U. S. at 70, 94 S. Ct. at 943. It is "[o]nly when the threatened harm would impair the court's ability to grant an effective remedy is there really a need for preliminary relief." *Chisom v. Roemer*, supra, at 1189.

15. The key to the decision of whether or not plaintiffs' harm is irreparable is a determination of whether or not the threatened harm would impair the court's ability to grant an effective remedy. *Chisom v. Roemer*, supra, at 1189. In a malapportionment case, an effective remedy is a constitutional redistricting plan. See, *Connor v. Finch*, 431 U. S. 407, 97 S. Ct. 1828, 52 L. Ed. 2d 465 (1977); *Watkins v. Mabus*, 771 F. Supp. 789 (S. D. Miss. 1991) (three-judge court). In other words, an effective remedy in this case would be the implementation of constitutionally acceptable redistricting plans for the Mississippi Senate and House of Representatives.[35]

16. The pivotal consideration in the determination of an effective remedy is time. The court must decide if the Legislature has been afforded ample time to redistrict but failed to do so, and, if so, is there sufficient time for the court to adopt plans[36] or draft plans for scheduled elections.

---

[35] The plans must also be precleared by either the United States Attorney General or the federal district court in Washington D. C. since Mississippi is covered by § 5 of the VRA. *Branch v. Smith*, 538 U. S. 254, 123 S. Ct. 1429, 155 L. Ed. 2d 407 (2003).

[36] Plaintiffs recognize that any plan reflecting legislative decisions in redistricting must be precleared. *Upham v. Seamon*, 456 U. S. 37, 102 S. Ct. 1518, 71 L. Ed. 2d 725 (1982); *Branch v. Smith*, supra.

"The Legislature bears first responsibility for reapportioning itself and should be given time to enact a plan of reapportionment." *Watkins v. Mabus*, supra, at 798, citing, *Wise v. Lipscomb*, 437 U. S. 535, 539-40, 98 S. Ct. 2493, 2497. 57 L. Ed. 2d 411 (1978); *Chisom v. Roemer*, supra; *Branch v. Smith*, supra, 538 U. S. 254. The Legislature recognized this responsibility, but thus far has failed to fulfill its obligation. The legislative session ends on April 3, 2011.[37] The candidate qualification deadline is June 1, 2011. The Legislature has been afforded sufficient time to redistrict.[38] When a

---

[37]Plaintiffs will file a separate motion for a temporary restraining order requesting that elections be temporarily enjoined under the current districts and the Legislature afforded an opportunity to adopt plans before the end of the session and submit them for § 5 review.

[38]The time afforded the Legislature in the present case is similar to the time afforded the Legislature to apportion Congressional districts in *Smith v. Clark I*, supra. There, the court held:

> This matter is before us on the plaintiffs' motion for preliminary injunction, as amended. In a previous order, we deferred ruling on that motion until January 7, 2002, in order to give the State authorities an opportunity to timely carry out their duty to reapportion Mississippi's congressional districts. We recognize that the primary responsibility for reapportionment lies with the State and that if the State can timely reapportion itself in a constitutionally acceptable manner, federal courts have no duties to draw congressional districts. Because, for reasons that follow, it now appears uncertain whether the State authorities can have a redistricting plan in place by March 1, 2002 (the deadline to qualify for candidacy for the United States House of Representatives in Mississippi, *see* Miss. Code Ann. § 23-15-299), we conclude that it is necessary to assert our jurisdiction and to take under advisement the plaintiffs' motion for preliminary injunction, and, in response to plaintiffs' motion, we will begin to draft a plan for reapportioning Mississippi's congressional districts in order to assure that the congressional election schedule as provided under the laws of the State of Mississippi is timely implemented under a plan that satisfies both the requirements of the Constitution and § 5 of the Voting Rights Act.

*Smith v. Clark I*, supra, at 504-505.

11

Legislature has census data and an opportunity to remedy malapportioned districts prior to the end of a legislative session and prior to the candidate qualification deadline but fails to do so, and the court has sufficient time to draft a court-ordered plan, then the court should find that the plaintiff has suffered an irreparable injury. See, *Smith v. Clark I*, supra, at 504-505. The Mississippi Legislature had sufficient time to redistrict the severely malapportioned districts but failed to do so. The Legislature's failure to redistrict will cause plaintiffs to suffer irreparable harm.

17. There is sufficient time for the court to fashion a remedy for the malapportioned districts. The court has time to adopt plans offered by the plaintiffs or draft plans itself. "The Legislature having failed to [redistrict], however, [the court is] called upon to decide whether the elections will be held; and if so, whether under a plan adopted by the court, under a plan submitted by one of the parties, or under the existing districting scheme..." *Watkins v. Mabus*, supra, at 798.

18. In *Watkins*, the court did not have sufficient time to draft legislative plans because the plaintiffs filed suit just two months before scheduled elections and the amount of proof required to draft a plan. *Watkins v. Mabus*, supra, at 799. In that case, the plaintiffs filed suit well after the candidate qualification deadline. *Watkins v. Mabus*, supra. The court did not have sufficient time to conduct hearings, develop criteria, and draft plans prior to the elections. *Watkins v. Mabus*, supra, at 799. Furthermore, the court wanted to "avoid a disruption of the election process which might result from requiring precipitate changes that could make unreasonable or embarrassing demands on a State in adjusting to the requirements of the court's decree." *Chisom v. Roemer*, supra, at 1189, quoting, *Reynolds v. Sims*, 377 U. S. at 585, 84 S. Ct. at 1394; *Watkins v. Mabus*, supra.

19. Unlike *Watkins*, the court, here, has sufficient time to conduct hearings, draft criteria, and draft plans prior to the scheduled election without disrupting the state election process. Unlike

*Watkins*, the plaintiffs, here, filed suit more than two months before the candidate qualification deadline. That deadline is not until June 1, 2011. Absentee and regular ballots will not have to be printed until after June 1, 2011. Election officials have sufficient time to notify voters of any changes in House and Senate districts. In that regard, the time the court has in the present case is similar to the time the court had in *Smith v. Clark I*, supra. In *Smith v. Clark I*, the court gave the Mississippi Legislature less than one week after the 2002 legislative session began to make clear that the Legislature could have a congressional redistricting plan in place by the March 1, 2002 qualification deadline. *Smith v. Clark I*, supra, at 506 ("We stated, however, that if it was not clear by January 7, 2002, that the State authorities can have a redistricting plan in place by March 1, we would assert our jurisdiction and proceed expeditiously to rule on plaintiffs' motion for preliminary injunction and, if necessary, draft and implement a plan reapportioning the State's four congressional districts"). This court, likewise, has sufficient time to choose among plans offered by the plaintiffs or draft plans if it is not clear by sine die on April 3, 2011 that the Legislature can have redistricting plans in place by June 1, 2011. See, *Smith v. Clark I*, supra. Consequently, the plaintiffs will suffer irreparable injury if the injunction does not issue. *Smith v. Clark I*, supra; *Watkins v. Mabus*, supra.[39]

        c.    <u>**The Threatened Harm to the Plaintiffs Outweigh Any Harm to the Defendants**</u>.

        20.    Plaintiffs will suffer irreparable injury if an injunction does not issue. [See, II a & b above]. The third *Canal Authority* factor is whether or not the threatened harm the plaintiffs will suffer if an injunction is not issued outweigh any harm the defendants will suffer if one is issued.

---

[39]In *Watkins*, although the found the benchmark plan to be "unconstitutionally malapportioned," the court allowed elections to proceed, on an interim basis, because there was insufficient time for the court to fashion a remedy. *Watkins v. Mabus*, supra. However, the court, in the instant case, has sufficient time to fashion a remedy.

The pivotal question when considering this factor is what harm would the defendants suffer if an injunction issues? Courts have held that a disruption of the election process in impending elections is a harm a defendant would suffer if an injunction issues. *Reynolds v. Sims, supra; Chisom v. Roemer*, supra, at 1189; *Smith v. Clark*, 189 F. Supp. 529, at 535-536 (S. D. Miss. 2002) (three-judge court) (*Smith v. Clark II*). The Fifth Circuit, in quoting *Reynolds v. Sims* held:

> In awarding or withholding immediate relief, a court is entitled
> to and should consider the proximity of a forthcoming election
> and the mechanics and complexities of state election laws,
> and should act and rely upon general equitable principles.
> With respect to the timing of relief, a court can reasonably
> endeavor to avoid a disruption of the election process which
> might result from requiring percipitate changes that could
> make unreasonable or embarrassing demands on a State
> in adjusting to the requirements of the court's decree.

*Chisom v. Roemer*, supra, at 1189, quoting *Reynolds v. Sims,* 377 U. S. At 585, 84 S. Ct. At 1394. However, the granting of an injunction in the instant case would not disrupt Mississippi's election process. The candidate qualification deadline is not until June 1, 2011. Circuit Clerks have ample time to notify voters of any change in legislative districts.[40] Election officials have not started preparing absentee or regular ballots yet. In fact, legislative candidates have not been certified yet. The court has ample time to grant a preliminary injunction and order interim relief without unduly interfering with the election process. A court may withhold granting an injunction if granting an

---

[40]Some county board of supervisors are also redistricting supervisor and other local districts. See, *Hancock County Board of Supervisors vs. Ruhr*, Civil Action No. 1:10-cv-00564-LG-RHW (S. D. Miss.); *Panola County, Miss. Branch of the NAACP vs. Panola County, Miss. Board of Supervisors*, Civil Action No. 2:11-cv-00043-MPM-DAS; *Desoto County, Miss. Branch of the NAACP vs. Desoto County, Miss. Board of Supervisors*, 2:11-cv-00040-SA-DAS. Local election officials must notify voters of any voting changes affected by county redistricting. It would not substantially increase the burden of circuit clerks and other local officials to notify voters of changes affected by legislative redistricting as well.

injunction would create voter confusion or place undue burdens on political parties or candidates. See, *Watkins v. Mabus*, supra, at 801.  However, where, as here, the granting of an injunction would not create voter confusion or place undue burdens on political parties or candidates, the injunction should be granted. See, *Smith v. Clark I*, supra;  *Smith v. Clark II*, supra, at 535-536.  Consequently, the threatened harm the plaintiffs would suffer if an injunction is not granted outweigh any perceived harm the defendants would suffer if a  preliminary injunction is granted.  See, *Smith v. Clark I*, supra; *Smith v. Clark II*, supra, at 535-536; *Watkins v. Mabus*, supra, at 801.

        d.       **The Granting of an Injunction Will Serve the Public Interest.**

        21.       The final *Canal Authority* factor the court must consider is whether or not granting the injunction will disserve the public interest.  It will not.  To the contrary, it is in the public interest that an injunction  issue enjoining elections in the grossly malapportioned legislative districts. *Dyer v. Rich*, 259 F. Supp. 741, at 745 (N. D. Miss. 1966) ("[P]laintiffs are entitled to have the court require correction of the extreme disparity of population among the ...districts..."). An injunction should issue because the Legislature has failed to redistrict after being afforded a reasonable opportunity to do so. "Judicial authority to fashion a plan of reapportionment arises only after the state legislature is given an opportunity to enact a constitutionally acceptable plan and does not do so." *Mississippi State Chapter of Operation PUSH, Inc. v. Mabus*, 932 F. 2d 400, at 406 (5th Cir. 1991), citing *White v. Weiser*, 412 U. S. 783, 794, 93 S. Ct. 2348, 2354, 37 L. Ed. 2d 335 (1973). The court will have sufficient time to fashion an interim remedy without unduly interfering with the state election process if an injunction is granted now. *Branch v. Smith*, supra; *Smith v. Clark I*, supra; *Smith v. Clark II*, supra.  See, also,  II  b and c above.  Consequently, it is in the public interest that a preliminary injunction issues in this case.  *Branch v. Smith*, supra; *Smith v. Clark I*, supra; *Smith*

*v. Clark II*, supra.; *Dyer v. Rich*, supra.

### IV. THE PROPRIETY OF A TEMPORARY RESTRAINING ORDER.

22. A temporary restraining order may be issued without notice to the adverse party if (a) facts in an affidavit show that the plaintiff will suffer immediate irreparable injury "before the adverse party can be heard in opposition" and (b) the plaintiff's "attorney certifies, in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b).

23. In the instant case, the legislative session ends April 3, 2011. Plaintiffs' complaint was filed on March 17, 2011. The Governor, Attorney General, Secretary of State, Democratic Party Executive Committee and Republican Party Executive Committee were served with process on March 18, 2011. Connie Cochran was served with process on March 22, 2011. The Republican Party Executive Committee and the Democratic Executive Committee have filed answers. Connie Cochran has until April 13, 2011 to file an answer, and the Governor, Attorney General, and Secretary of State must file an answer shortly before then. In any event, all of the defendants' responsive pleadings are not due until April 13, 2011.[41]

24. Plaintiffs filed their motion for a temporary restraining order today, March 19, 2011. The defendants have 14 days after the motion have been served on them to file a response. Fed. R. Civ. P. 6(c)(1). That gives the defendants until April 12, 2011 to file a response to the motion.

25. The plaintiffs will suffer irreparable injury if they are forced to vote in districts that are severely malapportioned when the Legislature had a chance to remedy the malapportionment. [See, I and III above]. Specific facts in the Declaration of Thomas Plunkett show that immediate and

---

[41]The House Apportionment and Elections Committee has filed a motion to intervene and an answer. However, an order allowing the intervention has not been entered yet.


irreparable injury will result to the plaintiffs before the adverse parties can be heard in opposition. See, Fed. R. Civ. P. 65(b)(1)(A).

26. Plaintiffs' attorney have certified, in writing, the efforts made to give notice to the adverse parties and the reasons why it should not be required. See, Fed. R. Civ. P. 65(b)(1)(B).

**IV.    CONCLUSION.**

27. On the basis of the foregoing facts and authorities, plaintiffs submit that a temporary restraining order should be issued enjoining legislative elections using the current benchmark districts until a three-judge court can be convened and allowing the defendants to remedy the malapportionment before the end of the Legislative Session.

**WHEREFORE, PREMISES CONSIDERED**, plaintiffs respectfully move to issue a temporary restraining order enjoining legislative elections using the current benchmark districts until a three-judge court can be convened and allowing the defendants to remedy the malapportionment before the end of the Legislative Session.

This the 29th day of March, 2011.

Respectfully submitted,
MISSISSIPPI STATE CONFERENCE OF THE
NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE,
THOMAS PLUNKETT, ROD WOULLARD,
and HOLLIS WATKINS, on behalf of
themselves and all others similarly situated

*/s/ Carroll Rhodes*
CARROLL RHODES, ESQ., MSB # 5314
LAW OFFICES OF CARROLL RHODES
POST OFFICE BOX 588
HAZLEHURST, MS 39083
TEL.: (601) 894-4323

FAX: (601) 894-1464
e-mail: crhode@bellsouth.net

**CERTIFICATE OF SERVICE**

  I, Carroll Rhodes, do hereby certify that I have this date electronically filed the foregoing Motion for Preliminary Injunction with the Clerk of Court using the ECF system which sent notification of such filing to the following:

Mike Wallace, Esq.
Wise, Carter, Child & Caraway
Post Office Box 651
Jackson, Mississippi 39201-0651
E-Mail: mbw@wisecarter.com

Samuel L. Begley, Esq.
Begley Law Firm, PLLC
Post Office Box 287
Jackson, Mississippi 39205
E-Mail: sbegley1@bellsouth.net

Robert B. McDuff, Esq.
767 North Congress Street
Jackson, Mississippi 39202
E-Mail: rbm@mcdufflaw.com

Harold Pizetta, Esq.
Chief, Civil Litigation Division
Office of the Attorney General
Post Office Box 220
Jackson, Mississippi 39205
E-Mail: hpizz@ago.state.ms.us

Crystal Wise Martin, Esq.
Precious Martin, Sr. & Assoc., PLLC
Post Office Box 373
Jackson, Mississippi 39205-0373
E-Mail: cmartin@ptmandassoc.com

This the 29th day of March, 2011.

            */s/ Carroll Rhodes*
            CARROLL RHODES