IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

MISSISSIPPI STATE CONFERENCE OF THE  　　　　　　　　　　PLAINTIFFS
NAACP, et al.

vs.　　　　　　　　　　　　　　　　　　　　　　CIVIL ACTION NO.
　　　　　　　　　　　　　　　　　　　　　　　　3:11-cv-159(TSL)(MTP)

HALEY BARBOUR, in his official capacity as
Governor of the State of Mississippi, et al.　　　　　　　　DEFENDANTS

and

APPORTIONMENT AND ELECTIONS COMMITTEE
OF THE MISSISSIPPI HOUSE OF REPRESENTATIVES, et al.　　INTERVENORS


**OPPOSITION OF INTERVENORS, REPRESENTATIVES SIDNEY BONDURANT,
BECKY CURRIE, and MARY ANN STEVENS, TO THE ADOPTION OF
<u>2011 HOUSE PLANS AS INTERIM RELIEF FOR THE 2011 ELECTION</u>**

　　　　State Representatives Sidney Bondurant, Becky Currie, and Mary Ann Stevens (the "Representatives") respectfully oppose the pending motions urging the adoption of the 2011 House "plan," even as interim relief.[1] The Representatives hereby also respond to the Court's April 29, 2011 Order and Notice, in which the Court noted its inclination "to issue an order that the redistricting plans adopted respectively by the House of Representatives and the Senate during the regular 2011 session . . . be adopted as the interim court ordered plan for use in the

---

[1] For the sake of simplicity, the Representatives oppose the House Committee's motion to adopt the 2011 House and Senate plans [Docket 82], the separate motion of the Attorney General to adopt the 2011 plans [Docket 89], and the joinder of the House Committee's Motion by the Plaintiffs [Docket 86], and the Mississippi Democratic Party Executive Committee [Docket 83], in this single Opposition. To the extent it seeks the same relief, the Representatives also oppose the Plaintiffs' motion asking the Court to order the Attorney General to submit the un-enacted House plans to the Department of Justice for review under Section 5 of the Voting Rights Act [Docket 91]. Collectively, these parties are referred to herein as "the Movants." The Representatives do not separately address the 2011 Senate plan, which passed the Senate and the House, but was never properly enacted by the Legislature.

1

2011 elections." Order [Docket 95], at 2.  The Court invited all parties to submit evidence and objections regarding such a remedy by May 5, in advance of a May 10, 2011 hearing.  *Id.*

Respectfully, the Court should not take the expedient route urged by the Movants.  The interim relief contemplated by the Court will have anything but interim consequences for the Representatives themselves, for many others similarly situated, and for the Mississippians whose rights are injured by the House Committee's contrivances designed to preserve their majority in the House.  The quick fix the Movants urge would impose a House plan of questionable constitutionality, reward the refusal of the House Committee to offer a permissible plan within the legislative process—the very failure that got us here—and work significant long term harm to the legislative and constitutional framework established by the State of Mississippi for the redistricting process.

The Representatives briefly address each of these points in turn.  The Representatives also offer the attached Declarations as evidence in support of their position.  Further, the Representatives adopt and incorporate the Response of the Secretary of State [Docket 93] and the Joint Response of the Governor and the Mississippi Republican Party Executive Committee [Docket 92] as if fully set forth here.  In particular, the Representatives contend that the Court should grant the Secretary of State's motion to dismiss and allow the redistricting process to proceed in accordance with § 254 of the Mississippi Constitution of 1890.[2]  Regardless, for the reasons stated by the Secretary of State, the Governor, and the Republican Party, any court-ordered interim relief should employ current districts, not the ones offered by the Movants.

---

[2] The Representatives moved to intervene in this action on Thursday, April 21, 2011 [Docket 71].  Their motion was not addressed prior to the Court's April 22 status conference.  As a result, the Representatives' counsel attended, but did not participate in, the status conference.  The Representatives filed an amended motion to intervene after the status conference [Docket 81], attaching as Exhibit "A" a proposed joinder of the Motion to Dismiss filed by Secretary of State Delbert Hosemann [Docket 41], as their initial pleading in response to the Plaintiffs' complaint.

**The 2011 House "Plan" is a "Quick Fix" of Questionable Constitutionality.**

The House Committee and the other Movants jumping on the "adopt a 2011 plan" bandwagon invite a superficially pragmatic solution that is not as workable—or legally sound—as the House Committee urges. First, there is no single "House plan." The House leadership, on party line votes, pushed through two plans, and negotiated others during and even after the Session. If the Court determines that "the 2011 plan" should be used as an interim remedy, the Court will be required to choose one plan or the other. The Movants have nowhere offered proof as to which of their versions is "the plan" they now want the Court to adopt. Indeed, they have offered no proof that the plans are preferable to using current districts for the 2011 elections, in the face of contrary evidence offered by the Republican Party and the Governor.

There exist alternatives other than the "passed" House plans that could as easily be used. House Republicans offered a plan during the Session, which was defeated. Representatives Bondurant, Currie, Stevens, and others developed a plan in the waning days of the Session that was not formally considered. *See* Exhibit "A" hereto (Declaration of Mary Ann Stevens), at 6 (¶ 6) & Exh. 1 (attaching map for reference; explaining that maps could be drawn with less deviation, and more in line with Mississippi law, in a matter of days). As proposals that were never enacted by the Legislature, none of these plans has any more force than the others. If the Court must choose which aspects of "the House plan" offered by the Movants it will incorporate into an interim remedy, the Court might as well consider other modifications as it adopts a plan.

Thus, the solution being sold by the Movants still requires the Court to determine which districts it orders into effect. The fact that the Court will have to choose between the 2011 House plans gives particular force to the argument made by the Governor and the Republican Party,

3

Joint Response [Docket 92], at 9-13, that the 2011 House plans—either of the ones that passed—do not pass muster as court-ordered plans. While the remedy offered by the Movants may be superficially attractive, as a practical matter, it leads the Court down the road of fashioning relief itself.

That is an important point that bears repeating. Though the Attorney General and the Plaintiffs dub their proffered remedy a "legislative plan," *there is no legislative plan.* Nothing has been enacted by the Legislature; there is no plan for which deference is due. To give force to a plan adopted by the House Committee, or even one chamber, is akin to establishing state policy based on bills, even ones debated for "countless hours," AG Motion [Docket 89], at 2, that later died on the legislative calendar. Either a plan was passed according to the law, or it was not. Here, none passed. As argued by the Governor and the Republican Party, the Court must evaluate the House plans as proposed court-ordered plans, in which case, either plan that could be offered by the Movants is clearly deficient under applicable law.

### Representatives Bondurant, Currie, and Stevens Voted Against the House Plans Because They Disenfranchise Mississippi Voters and Disregard the Law.

The Representatives, and many other members of the House, opposed the House plans when offered by the House Committee during the Session because those plans unfairly target conservative members of the House, systematically disenfranchise Republican voters while overrepresenting Democratic voters, and ignore the clear dictates of Mississippi law. While it is generally true that, by itself, political gerrymandering does not violate the Constitution, *see Vieth v. Jubelirer*, 541 U.S. 267, 306-307 (2004) (Kennedy, J., concurring) (holding open "the possibility of judicial relief" for political gerrymandering "unrelated to any legitimate legislative objective"), political gerrymandering cannot serve as a justification for unnecessary population

4

deviations. *Larios v. Cox*, 305 F. Supp. 2d 1335, 1339-40 (N.D. Ga. 2004). Moreover, the House Committee refused all attempts to address their plans' legal deficiencies during the Session, leading directly to the failure of the Legislature to enact a redistricting plan. By adopting one of the House Committee's plans here, the Court would ratify the House Committee's failed attempts to pass their flawed plans and effectuate the harms that a large portion of the House, and a majority of the Senate, sought to prevent.

As with other members and candidates, the harm suffered by Representatives Stevens and Bondurant—and the voters in their current districts—under the 2011 House plans would be anything but interim. As noted in their attached declarations, they may well be "written out" of the Legislature. *See* Stevens Declaration, at 1-2 (¶¶ 2-4); Exhibit "B" hereto (Declaration of Sidney Bondurant), at 2-3 (¶¶ 6, 9-12). Representative Stevens, who voted against the current House leadership, had her district "collapsed," placing her in another incumbent Democrat's district. Voters in her old district are used to populate those of incumbents in the Delta who are friendly to the House leadership, but whose districts lost significant population. Stevens Declaration, at 1-2 (¶ 2); *see* Bondurant Declaration, at 3 (¶ 12) & Exh. 1 (discussing reported comments by Representative Bennett Malone that Stevens was deliberately drawn into a district where she had little chance for re-election). Representative Bondurant saw his district unnecessarily stretched to several new counties, and, in one of the House plans, most of the population in his district shifted from Grenada County, where he lives, to Oktibbeha County. Bondurant Declaration, at 1-2 (¶¶ 4-7). This was done to target him, as a leader in the House Conservative Caucus and an announced candidate for Speaker, *id.* at 2 (¶ 6), and it was done in

contravention of the clear dictates of Miss. Code Ann. § 5-3-101 (1972), [3] which mirror federal requirements.

Representative Stevens' situation is illustrative of the fatal flaws in the House plans. Although the Delta region lost significant population in the last ten years, not a single Delta district was lost when the House Committee redrew the lines.  Instead, people in districts like Stevens' were used to preserve the overrepresentation of the Delta, at the expense of stable or growing areas in other parts of the state.  Stevens Declaration, at 1-2 (¶ 2-4).  This plainly runs afoul of federal law.  *See Larios*, 305 F. Supp. 2d at 1337-38.

Shrewdly, the House plans actually offer most Republican incumbents friendlier districts than under the existing plan.  But those Republican districts are also packed with more voters than their Democratic counterparts—underrepresenting voters in oversized districts while overrepresenting voters in smaller districts.  Bondurant Declaration, at 2 (¶ 8); *see also* Exhibit "C" hereto (Declaration of Becky Currie), at 2 (¶ 6).  While most Republican incumbents might be "safe" under the House plans, voters in Republican-held districts are systematically disenfranchised and underrepresented by the partisan use of population deviations.  *See Larios*, 305 F. Supp. 2d at 1339-40 (rejecting plan that placed many Democrats in underpopulated districts and pitted many Republicans against each other in overpopulated districts as harming

---

[3] Miss. Code Ann. § 5-3-101 provides:

> In accomplishing the apportionment, the committee shall follow such constitutional standards as may apply at the time of the apportionment and shall observe the following guidelines unless such guidelines are inconsistent with constitutional standards at the time of the apportionment, in which event the constitutional standards shall control:
>
> (a) Every district shall be compact and composed of contiguous territory and the boundary shall cross governmental or political boundaries the least number of times possible; and
>
> (b) Districts shall be structured, as far as possible and within constitutional standards, along county lines; if county lines are fractured, then election district lines shall be followed as nearly as possible.

individual voters' rights).  That underrepresentation of voters across the state was one of the reasons the Representatives opposed the House Committee's plans.  *See* Currie Declaration, at 2 (¶¶ 6-7).  Shrewdness does not equate to legality.

The plans also violate the law by contorting districts more severely than before, disregarding communities of interest, political jurisdictions, and compactness.  The House Committee had no valid reason for disregarding these requirements of Mississippi and federal law.  Stevens Declaration, at 2 (¶¶ 4-5) ("districts were arranged not to take into account common factors or like interest but to draw lines that would . . . elect a Speaker of the House friendly to the committee who drew the lines"); *see* Currie Declaration, at 1-2 (¶¶ 3-7).

Nowhere is this clearer than in the case of several challengers, all to Democrats friendly to the House leadership, who were drawn out of incumbents' districts.  To remove Republican candidate Chip Wood from Democratic Representative Harvey Moss' district, the House Committee had to split the City of Corinth, precipitating a resolution from the City protesting the needless dilution of representation.  Bondurant Declaration, at 3 (¶ 11).  The House Committee did the same in Forest, Mississippi, to split Tom Miles, a Democrat preparing to challenge incumbent Democrat Tracy Arinder, from Arinder's district; the Mayor of Forest protested directly to Representative Bondurant to make Forest "whole" again.  *Id.* (¶ 10).  Representative Bennett Malone candidly discussed to his hometown newspaper how he had his declared opponent, Republican Jay Mathis, drawn out, saving Malone "about $50,000 worth" in re-election costs.  *Id.* at 3 (¶ 12) & Exh. 1.

Again, while partisan gerrymandering has been condoned by the courts, systematic violation of the law to achieve such gerrymandering is not.  Given the above aspects of the 2011

7

House plans, the Court should not reward the House Committee's roughshod approach by allowing either of their failed plans to be used, in turn, as a remedy for the failure to produce a plan that complies with the law.  The Movants have produced no justification for requesting that the Court obviate either the votes of 56 Representatives and the majority of Senators who voted against the House plans, or the legal deficiencies noted above for doing so.

### The Court's Adoption of the 2011 House "Plan" Would Work Significant Harm to the Legislative and Constitutional Framework Established by the State of Mississippi for the Redistricting Process.

Perhaps the most compelling reason to reject the Movants' request to adopt the 2011 House plan—whichever one—is that to indulge their requested relief, even as an interim plan, will work permanent harm on the framework established by Mississippi for the redistricting process.  By placing its imprimatur on a plan that only passed one chamber of the Legislature, and was affirmatively rejected by the other, the Court will read out of existence the express provisions of § 254 of the Mississippi Constitution, as well as Miss. Code Ann. § 5-3-101.  Short of declaring those provisions unconstitutional, the Movants' suggested remedy is the *most intrusive* of the possible approaches that the Court could employ.

Through the precedent it would set by granting the Movants' relief, the Court would revive a resolution that died in the Legislature, and give it force as if it had been enacted.  Though the Movants engage in the charade of dubbing the House "plan" a "legislative plan" entitled to deference, the Court should not play along.  There is no legislative plan.  Instead, the Court risks codifying an unspoken "gentlemen's agreement" that each house unilaterally may fix its own districts, even though such an agreement has existed in no code section, case law, or certainly not the Constitution.  Indeed, the premise that in redistricting, each chamber can act on its own runs counter to express law, and counter to the way any other state policy is enacted.

8

Elevating the "gentlemen's agreement" above the Mississippi Constitution will mean that in the future, neither chamber will have any incentive to craft a plan that meets the process and substance of the Constitution and statutes, and, particularly, pass the other chamber. There will be no check on the self-interest of each house's majority members. Instead, the leadership of either chamber will simply need to ram a plan of its liking through its willing majority, and run to federal court should the other house refuse to accede to its scheme.

The Movants thus invite this Court to codify court involvement in this process every decennial cycle. And to what end? The short term relief urged by the Movants will cause significant long term harm, for perhaps no real gain, other than to effectuate their concocted districts for this year. The other practical result is a return to court next year, when the Legislature again deadlocks over enacting a plan. The Senate will very likely be controlled by Republicans; no Democrat qualified for the office of Lt. Governor this year. The House may or may not be controlled by Democrats allied with the current House leadership. The only difference in the redistricting process next year, then, will be this Court's precedent here. Respectfully, if the Court allows the Movants to disregard the framework set by Mississippi law, the resulting dynamic will be anything but interim.

WHEREFORE, PREMISES CONSIDERED, Representatives Sidney Bondurant, Becky Currie, and Mary Ann Stevens respectfully request that this Court decline to adopt either of the House-passed plans for the 2011 elections. The Court should deny the instant motions because the relief requested, while offered under the allure of simplicity and efficiency, invites the Court to accomplish the improper handiwork that the House Committee failed to enact during the Session.

This the 3rd day of May, 2011.

                                    Respectfully submitted,

                                    BY:  /s/ Cory T. Wilson_____
                                          CORY T. WILSON


CORY T. WILSON,  MSB#10168
GORDON U. SANFORD, III, MSB#99233
WILLOUGHBY LAW GROUP
P.O. BOX 2305
MADISON, MS  39130-2305
TELEPHONE: 601-899-0065
FACSIMILE:   866-733-2008
EMAIL:       cory@wlglegal.com
              sandy@wlglegal.com

**CERTIFICATE OF SERVICE**

I, Cory T. Wilson, do hereby certify that I have this date electronically filed the foregoing Opposition to Adoption of 2011 House Plans as Interim Relief with the Clerk of the court using the ECF system which sent notification of such filing to the following:

| | |
|---|---|
| Michael G. Wallace, Esq.<br>mbw@wisecarter.com | Charles Stevens Seale, Esq.<br>css@wisecarter.com |
| Samuel L. Begley, Esq.<br>sbegley1@bellsouth.net | |
| Robert B. McDuff, Esq.<br>rbm@mcdufflaw.com | |
| Harold Pizzetta, Esq.<br>hpizz@ago.state.ms.us | Justin L. Matheny, Esq.<br>jmath@ago.state.ms.us |
| Crystal Martin, Esq.<br>cmartin@co.hinds.ms.us | |
| Jack L. Wilson, Esq.<br>jwilson@babc.com | Stephen Lee Thomas, Esq.<br>sthomas@babc.com |
| Robert L. Gibbs, Esq.<br>rgibbs@brunini.com | Matthew W. Allen, Esq.<br>mwallen@brunini.com |
| John F. Hawkins, Esq.<br>john@hsglawfirm.net | |

This the 3rd day of May, 2011.

                                                       /s/ Cory T. Wilson_____
                                                       CORY T. WILSON