IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**MISSISSIPPI STATE CONFERENCE OF THE NAACP, ET AL.**

      **Plaintiffs,**

vs.                          No.  3:11-cv-159 (TSL)(FKB)

**HALEY BARBOUR, ET AL.,**

      **Defendants,**
**and**

**THE APPORTIONMENT AND ELECTIONS COMMITTEE
OF THE MISSISSIPPI HOUSE OF REPRESENTATIVES,
SENATOR TERRY C. BURTON, AND SENATE DEMOCRATIC
CAUCUS,**

      **Intervenors.**

### SUBMISSION OF INTERVENOR HOUSE
### APPORTIONMENT AND ELECTIONS COMMITTEE
### IN RESPONSE TO THE COURT ORDER OF APRIL 29, 2011

The Intervenor House Apportionment and Elections Committee does not wish to present evidence at the Tuesday hearing unless the Court prefers to hear evidence, or unless it is appropriate to present evidence in order to respond to evidence presented by other parties.  Most of the evidence that the House Committee would present is statistical or documentary in nature, and is included in affidavits and documents that are attached or already on file with the Court.  To the extent the Court considers evidence, it may do so based on the documents and affidavits submitted into the record thus far by all parties, with consideration for the extent to which hearsay should be credited and whether a witness has a basis of knowledge.  There is no need for live testimony, particularly in light of the time constraints and the expedited nature of these proceedings.

In the event the Court chooses to hear live testimony, the primary witness for the House Committee would be Dr. Gerald Webster, whose affidavit is attached and who was

hired as an expert consultant by the Joint Standing Committee on Legislative Reapportionment. Because Dr. Webster lives in Wyoming, the Committee would prefer to submit his affidavit in lieu of live testimony even if the Court is hearing other live testimony on Tuesday. But if the Court is hearing live testimony on Tuesday on the issues contained in his affidavit, and if the Court will not accept his affidavit in lieu of his live testimony, he will come to Jackson. Because of the distance and the flight connections, Dr. Webster will travel to Mississippi on Sunday to insure that he is present for a Tuesday morning hearing. If the Court could inform the parties on Friday whether it will be hearing live testimony on Tuesday regarding those issues, and whether Dr. Webster's affidavit will be accepted in lieu of his live testimony, that will be greatly appreciated. However, we understand the Court may not be in a position to inform the parties of this as early as Friday.

The facts that the Committee submits to the Court, and that would be the subject of evidence if the Court receives evidence on Tuesday, are listed below. The affidavit or document supporting the fact is listed afterwards and the relevance is then stated in italics.

The Difference Between House Consensus 1 Plan and House Consensus 2 Plan

1. The House Consensus 1 plan and the Senate plan were both approved by the Standing Joint Legislative Committee on Reapportionment, composed of ten House members and ten Senators, in early March of 2011. On March 15, House Consensus 1 was passed by the House. During the last week of the 2011 session, the House passed a modified plan known as House Consensus 2 that made changes to seven districts in House Consensus 1 in order to reduce fragmentation in the City of Starkville and Oktibbeha County. Those modifications do not affect the number of majority African-American districts. Exhibit D, paragraph 6. The Committee suggests that Plan 2 is preferable but that either is sufficent. *This fact is mentioned simply to explain the difference between the two plans.*

Electoral Analysis

2.    Analysis of election data in the relevant precincts demonstrates that of the 122 districts in the House Consensus Plan 1 and House Consensus Plan 2, Governor Barbour received the majority of the votes in 76 of them (62.3%) in the November, 2007 gubernatorial election and Senator McCain received the majority of the votes in 76 of them (62.3%) in the November, 2008 presidential election. Exhibit A, paragraph 2. *To the extent any of the parties suggest that the House plan is skewed in favor of Democrats, this is presented to show that Republicans can win in the House plan, particularly if voters in legislative races support Republican candidates in the same way they have in many statewide races.*

3.    Election returns for the 2007 legislative elections in Mississippi demonstrate that, statewide, voters cast their ballots in Mississippi House of Representatives elections and Mississippi Senate elections for Democrats, Republicans, and Independents in the following numbers:

House

| Democrats:   | 369,499 | (54%) |
| Republicans: | 307,166 | (45%) |
| Independents:|   6,053 | ( 1%) |

Senate

| Democrats    | 347,114 | (51%) |
| Republicans  | 320,101 | (47%) |
| Independents |  14,954 | ( 2%) |

Exhibit A, paragraph 3. *To the extent any party suggests that the Democratic majority in the House is the result of skewed election districts, these election returns demonstrate that in the*

*most recent legislative elections, voters generally preferred Democratic candidates.*

## Deviations

4. The 2011 House plans, House Consensus 1 and House Consensus 2 (HC 1 and HC 2), reduce the deviations than existed when the 2002 House plan was adopted using 2000 census data. When the 2002 plan was adopted using 2000 census data, 81 districts had deviations plus or minus 4.0% or more. 35 of those had deviations of plus or minus 4.9% or more. (The 2002 plan using 2000 census data is available at http://www.msjrc.state.ms.us/pdf/house_summary.pdf) . By contrast, in the 2011 plan HC 1 using 2010 census data, there are 43 districts with plus or minus deviations of plus or minus 4.0% or more and only seven districts with plus or minus 4.0% or more. In the 2011 plan HC 2 using 2010 census data, there are 42 districts with deviations of plus or minus 4.0% or more and only six of those districts with plus or minus 4.9% or more. Exhibit B; Exhibit D, paragraph 2. *This demonstrates that the deviations in the 2011 House Plans are significantly lower than when the 2002 House Plan was adopted. The 2011 deviations also are significantly lower than those in Larios v. Cox, 300 F. Supp. 2d 1320, 1326 (N.D. Ga. 2004) (three-judge court), cited by some of the parties, where 90 of 180 (50%) districts in the House plan exceeded plus or minus 4.0% and twenty of 180 (11%) exceeded 4.9%*

## Pairing of Incumbents

5. The 2011 plans pair only four incumbents, three of whom are Democrats, into separate pairings. One is a Democrat vs. Democrat pairing and one is a Democrat vs. Republican pairing. *This is in contrast to the Larios case, where 37 Republicans (50% of the Republican Caucus) were paired, while only nine Democrats (comprising less than 9% of the Democratic Caucus) were paired.* 300 F. Supp. 2d at 1329.

<u>Compactness</u>

6.       On average, the 2011 House plans are no less compact than the 2002 House plan. Exhibit B. *This is in response to any suggestion that the 2002 plan is preferable to the 2011 plans.*

7.       On average, the districts with Republican incumbents are no less compact than the districts with Democratic incumbents.  While some Republican incumbent districts are less compact than in 2002, some are more compact..  The same is true with respect to Democratic incumbent districts.  Exhibit B.  *This is submitted in response to statements in affidavits submitted by other parties, particularly Docket No. 92-2, that a handful of Republican incumbent districts in the 2011 House plans are less compact than in 2002.*

<u>Retrogression</u>

8.       The 2011 House plans do not retrogress.  Significant revisions to the 2002 plan were necessary to prevent retrogression and bring the relevant districts, many of which were underpopulated, into compliance with the plus or minus 5% standard.  Exhibit C.  *This is to demonstrate compliance with the standards of the Voting Rights Act.*

<u>Actions by the Joint Committee</u>

9.       The Standing Joint Legislative Committee on Reapportionment hired two experienced experts in the field of voting rights, Dr. Gerald Webster and Dr. Richard Engstrom.  Dr. Webster concluded that the 2011 House and Senate plans that were approved by the Joint Committee are no less compact than the 2002 plans.  Dr. Engstrom concluded that the plans are not retrogressive and satisfy the one-person, one-vote rule.  The Joint Committee approved both the Senate plan and the House Consensus 1 plan.  Exhibit D, paragraphs 6-7.  *This is submitted to show that the Joint Committee consulted experts regarding these plans.*

<u>Comparison of 2002 House Plan and 2011 Plans</u>

10.     In addition to factors mentioned already:  In the 2002 plan, five counties were wholly included in one House district.  In the 2011 plans, ten counties were wholly included in one House district.  The 2002 plan had 449 split precincts.  The 2011 HC 1 plan has 184 split precincts.  The 2011 HC 2 plan has 182 split precincts.  Exhibit D, paragraphs 3 and 5. *This is in response to the recent suggestion of some parties that use of the 2002 plan in the upcoming election is preferable to the 2011 plan.*

<u>Responses to Specific Points Made by Other Affiants</u>

11.     To the extent the Court is concerned with specific complaints about particular districts, attached in Exhibit D, paragraphs 8-12, are responses to some specific points regarding a handful of districts that are contained in affidavits submitted by other parties.

Respectfully submitted,

s/Robert B. McDuff
ROBERT B. MCDUFF
Miss. Bar No. 2532
767 North Congress Street
Jackson, Mississippi  39202
(601) 969-0802
rbm@mcdufflaw.com

Counsel for Intervenor
House Apportionment and Elections Committee

6

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 5, 2011, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification to the following:

Carroll Edward Rhodes
LAW OFFICES OF CARROLL RHODES
P. O. Box 588
Hazlehurst, MS 39083

Stephen Lee Thomas
Jack L. Wilson
BRADLEY ARANT BOULT CUMMINGS LLP
P.O. Box 1789
Jackson, MS 39215-1789

Michael B. Wallace
Charles Stevens Seale
WISE CARTER CHILD & CARAWAY
P.O. Box 651
Jackson, MS 39205-0651

Harold Pizzetta, III,
Chief, Civil Litigation Division
Justin L. Matheny
Office of the Attorney General
P.O. Box 220
Jackson, MS 39205

Robert L. Gibbs
Matthew W. Allen
BRUNINI, GRANTHAM, GROWER & HEWES
P. O. Drawer 119
Jackson, MS 39205-0119

Crystal Wise Martin
Hinds County Board of Supervisors Attorney
P. O. Box 686
Jackson, MS 39205-0686

Samuel Begley
Begley Law Firm
P.O. Box 287
Jackson, MS 39205

John F. Hawkins
HAWKINS, STRACENER, & GIBSON, PLLC
P.O. Box 24627
Jackson, MS 39225-4627

R. Andrew Taggart , Jr.
Clay B. Baldwin
TAGGART, RIMES & USRY, PLLC
P. O. Box 3025
Madison, MS 39130

Cory T. Wilson
WILLOUGHBY LAW GROUP, PLLC
602 Steed Road
Suite 110
Ridgeland, MS 39157

This 5th day of May, 2011.

        s/Robert B. McDuff
        Counsel for Intervenor
        House Apportionment and Elections Committee