UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


MISSISSIPPI STATE CONFERENCE OF
THE NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE,
THOMAS PLUNKETT, ROD WOULLARD,
and HOLLIS WATKINS, on behalf of
themselves and others similarly situated,                                            PLAINTIFFS


VS.                                      CIVIL ACTION NO. 3:11cv159-TSL-EGJ-LG-MTP

HALEY BARBOUR, in his official capacity
as Governor of the State of Mississippi,
JIM HOOD, in his official capacity as
Attorney General of the State of Mississippi,
and DELBERT HOSEMANN, in his official
capacity as Secretary of State of the State
of Mississippi, as members of the State
Board of Election Commissioners; THE
MISSISSIPPI REPUBLICAN PARTY
EXECUTIVE COMMITTEE; THE
MISSISSIPPI DEMOCRATIC PARTY
EXECUTIVE COMMITTEE; and CONNIE
COCHRAN, in her official Capacity as
Chairman of the Hinds County, Mississippi
Board of Election Commissioners, on behalf of
herself and all others similarly situated,                                            DEFENDANTS


and

APPORTIONMENT AND ELECTIONS COMMITTEE
OF THE MISSISSIPPI HOUSE OF REPRESENTATIVES;
MISSISSIPPI STATE SENATE DEMOCRATIC CAUCUS
AND STATE DEMOCRATIC SENATORS, in their
individual capacities; TERRY C. BURTON, SIDNEY
BONDURANT, BECKY CURRIE, and MARY ANN
STEVENS,                                                                            INTERVENORS


**<u>MEMORANDUM OPINION AND ORDER</u>**

The Plaintiffs ask us to declare that the Mississippi Senate and House of Representatives (collectively, the "Legislature") are unconstitutionally malapportioned. The Plaintiffs further contend that an election this year under the present district boundaries will violate the one-person, one-vote requirement of the Equal Protection Clause. All of the parties acknowledge that shifts in population, reflected in the 2010 census, have resulted in the malapportionment of Mississippi's existing legislative districts. Generally speaking, the parties have presented us with three options. The Democratic Party and others ask us to adopt as an interim remedy the respective plans passed this year by the House and the Senate, but not adopted by the full Legislature. The Republican Party and others agree that a remedy for malapportionment should be imposed, but they ask us to appoint an expert to draw a new plan, or to use the new plan that they have proposed. Third, the Secretary of State and others assert that it is premature for this Court to impose any remedy, because neither the Mississippi Constitution nor the United States Constitution requires the Legislature to reapportion itself until next year. We agree with the Secretary of State's position that imposition of a remedy is premature and allow the 2011 legislative elections to proceed under the present districts.

We approach our decision today on the premise that federal courts should not order around a state legislature unless the legislature has acted in violation of the United States Constitution. Indeed, the Supreme Court has stated, time and again, that federal courts must defer to state redistricting policies so long as those policies are not inconsistent with federal constitutional and statutory law. *See Upham v. Seamon*, 456 U.S. 37, 41 (1982). The Mississippi Constitution, Section 254, provides that the Legislature must reapportion no later than ten years from the previous reapportionment following the decennial census. Section 254 applied here does not require reapportionment until next year, 2012. Unless this provision violates the United States constitutional requirements for reapportionment, we must respect its terms for reapportionment. We now turn to address this question, first in what might be called an executive summary, then more in detail.

2

We first look to *Reynolds v. Sims* , 377 U.S. 533 (1964), to inquire whether it is unconstitutional to postpone reapportionment until next year or whether the Legislature must be reapportioned this year.   That opinion established the constitutional duty of a state legislature to reapportion itself.   Chief Justice Earl Warren, speaking for the Court, held that legislative reapportionment every ten years meets "the minimal requirements for maintaining a reasonably current scheme of legislative representation" under the Equal Protection Clause. 377 U.S. at 583–84.   It is obvious that hardly a year passes after reapportionment that citizens are not denied their one-person, one-vote constitutional right.   Hurricanes, floods, tornadoes, economic conditions, etc. constantly cause population shifts that leave the one-person, one-vote principle in shambles.   Purity in protecting this constitutional right is, as the Supreme Court has recognized, so impractical as to be impossible.   So, the Supreme Court has created a "fiction" to protect that right:   A state legislature must reapportion itself only every ten years.   *See League of United Latin American Citizens v. Perry*, 548 U.S. 399, 421 (2006) (plurality opinion of Kennedy, J.) (recognizing "that States operate under the legal fiction that their plans are constitutionally apportioned throughout the decade, a presumption that is necessary to avoid constant redistricting, with accompanying costs and instability") (citing *Georgia v. Ashcroft*, 539 U.S. 461, 488 n.2 (2003), and *Reynolds*, 377 U.S. at 583) .   The Mississippi Legislature reapportioned itself in 2002.   Only nine years have passed.   Thus, the ten-year period to which *Reynolds* referred does not expire until 2012.   The Legislature has one more year before it is required, under both the Supreme Court's holding and under State law, to reapportion itself.   We are mindful in this case of *Reynolds*'s instruction that federal "judicial relief becomes appropriate only when a legislature fails to reapportion according to federal constitutional requisites in a timely fashion after having had an adequate opportunity to do so."   377 U.S. at 586.   And as we stated above, we are required to respect State law unless its application violates the United States Constitution or federal law.   *See Upham*, 456 U.S. at 41.   In this case, the ten years not having expired, it does not.

We initially expressed our inclination to impose an interim remedy, ordering the Mississippi Legislature to redistrict.  Upon further consideration, we have concluded that, in the light of the fact that  *no* party has argued, or even asserted, that Section 254 is unconstitutional on its face, or as applied, imposing an interim remedy would be premature and inconsistent with the Supreme Court's holdings in *Reynolds* (legislative reapportionment every ten years satisfies the one-person, one-vote principle) and *Upham* (federal courts must respect state law on reapportionment unless such law is unconstitutional).  Because, however, Plaintiffs allege an injury with a federal remedy sufficient to invoke our Article III jurisdiction,[1] we will hold this case in abeyance until the Legislature completes the process for decennial reapportionment next year as set forth in Mississippi law.  We retain jurisdiction to consider whether a federal remedy may be appropriate at that time for the undisputed malapportionment.

We further explain the reasons for this decision below:

---

[1] *See infra* note 6.

4

# I.

## Facts

The Mississippi Constitution sets forth the procedures for redistricting of the Legislature:

> The Legislature shall at its regular session in the second year following the 1980 decennial census and every ten (10) years thereafter, and may, at any other time, by joint resolution, by majority vote of all members of each house, apportion the state in accordance with the Constitution of the state and of the United States into consecutively numbered senatorial and representative districts of contiguous territory. . . .  Should the Legislature adjourn without apportioning itself as required hereby, the Governor by proclamation shall reconvene the Legislature within thirty (30) days in special apportionment session which shall not exceed thirty (30) consecutive days, during which no other business shall be transacted, and it shall be the mandatory duty of the Legislature to adopt a joint resolution of apportionment.  Should a special apportionment session not adopt a joint resolution of apportionment as required hereby, a five-member commission consisting of the Chief Justice of the Supreme Court as chairman, the Attorney General, the Secretary of State, the speaker of the House of Representatives and the president pro tempore of the Senate shall immediately convene and within one hundred eighty (180) days of the adjournment of such special apportionment session apportion the Legislature, which apportionment shall be final upon filing with the office of the Secretary of State.  Each apportionment shall be effective for the next regularly scheduled elections of members of the Legislature.

MISS. CONST. art. 13, § 254.

Guidelines and standards for apportionment are set forth in Section 5-3-101 of the Mississippi Code:

> In accomplishing the apportionment, the committee shall follow such constitutional standards as may apply at the time of the apportionment and shall observe the following guidelines unless such guidelines are inconsistent with constitutional standards at the time of the apportionment, in which event the constitutional standards shall control:
>
> (a) Every district shall be compact and composed of contiguous territory and the boundary shall cross governmental or political boundaries the least number of times possible; and

5

(b) Districts shall be structured, as far as possible and within constitutional standards, along county lines; if county lines are fractured, then election district lines shall be followed as nearly as possible.

MISS. CODE ANN. § 5-3-101 (1972-2002).

Thus in August and September 2010, in anticipation of the need for reapportionment of the Legislature, the Standing Joint Legislative Committee on Reapportionment and Redistricting of the Mississippi Legislature ("Joint Committee") held hearings at various locations throughout the State. Data from the 2010 decennial census became available to the Legislature on February 3, 2011, while it was still in its regular session. After the Joint Committee received the 2010 census data, it conducted four additional public meetings. Thereafter, the Joint Committee unanimously voted to adopt reapportionment plans for the House and the Senate. The House plan that was approved by the Joint Committee was called "House Consensus 1."

On March 1, 2011, Representative Reynolds, Chairman of the House Apportionment and Elections Committee, introduced a joint resolution ("J.R. 1"), which contained the plan unanimously adopted by the Joint Committee. The House adopted J.R. 1 on March 4, and it was transmitted to the Senate, where the Lieutenant Governor, as the presiding officer, referred it to the Elections and Rules Committees of the Senate. J.R. 1 died in the Senate Elections Committee.

On March 8, 2011, Senator Burton, the Chairman of the Senate Elections Committee, introduced a joint resolution ("J.R. 201") in the Senate, which contained the plan unanimously adopted by the Joint Committee. The Lieutenant Governor referred the resolution to the Elections and Rules Committees. J.R. 201 eventually passed the Senate, by a vote of 44-7, and it was referred to the House Apportionment and Elections Committee. The House Apportionment and Elections Committee reported the bill out with an amendment containing the entire House Plan that had been killed in the Senate Elections Committee. On March 15, 2011, the House adopted the amended J.R. 201, which contained both the House

Plan and the Senate Plan.  J.R. 201 was then returned to the Senate for concurrence.  On March 17, the Senate declined to concur, and invited conference.  The Lieutenant Governor named Senate conferees, but the Speaker of the House declined to do likewise.  J.R. 201 died on the calendar on April 7 when the House and Senate adjourned.

On April 4, 2011, Senator Hewes, the President Pro Tempore of the Senate and Chairman of the Senate Rules Committee, introduced Senate Concurrent Resolution 692 ("S.C.R. 692"), to authorize the Lieutenant Governor and the Speaker of the House to extend the 2011 legislative session.  S.C.R. 692 passed the Senate and was sent to the House.  The House amended S.C.R. 692 by inserting the House and Senate Plans.  S.C.R. 692 was transmitted to the Senate for concurrence, but the resolution died on the calendar on April 7, when the Senate adjourned.

According to the affidavit of Representative Reynolds, the House passed a modified plan known as "House Consensus 2" during the last week of the session but, because of a procedural ruling in the Senate, the Senate did not vote on this plan.  House Consensus 2 changed some districts in House Consensus 1 in order to reduce fragmentation in the City of Starkville and Oktibbeha County.

Thus, the Legislature adjourned on April 7, without passing a joint resolution containing the plans proposed by the House and Senate.  The current members' terms expire on December 31, 2011.  June 1, 2011 is the deadline for candidates to qualify to run for office for the four-year term beginning on January 1, 2012.  Primary elections are scheduled to take place on Tuesday, August 2, 2011.  Run-offs, if necessary, are scheduled to take place on August 23, 2011.  The general election is scheduled for November 8, 2011.

## II.

### Description of Pleadings and Positions of Parties

On March 17, 2011, prior to the adjournment of the Legislature, the Mississippi State Conference of the National Association for the Advancement of Colored People ("NAACP"), Thomas Plunkett, Rod Woullard, and Hollis Watkins (collectively, the

"Plaintiffs") filed suit on behalf of themselves and a class defined as "all African-American citizens and voters in the State of Mississippi."  The defendants include Governor Haley Barbour, Attorney General Jim Hood, and Secretary of State Delbert Hosemann, in their official capacities and as members of the State Board of Election Commissioners.  Also named as defendants are the Mississippi Republican Party Executive Committee ("Republican Party"), the Mississippi Democratic Party Executive Committee ("Democratic Party"), and Connie Cochran, in her official capacity as Chairman of the Hinds County Board of Election Commissioners, and as representative of a class consisting of "all chairmen of county boards of election commissioners in the State of Mississippi."  The House Apportionment and Elections Committee, the Mississippi State Senate Democratic Caucus and State Democratic Senators in their individual capacities, Senator Burton, and Representatives Bondurant, Currie, and Stevens have all been granted leave to intervene.

The first district judge to whom this case was assigned recused himself on March 30.  The district judge who replaced him granted the Plaintiffs' motion for appointment of a three-judge court on April 1, and then recused himself on April 11.  The case was assigned to Judge Lee on April 12.  On April 13, approximately six weeks before the candidate qualification deadline, this three-judge Court was convened by Order of the Honorable Edith H. Jones, Chief Judge of the United States Court of Appeals for the Fifth Circuit.  We have jurisdiction pursuant to the provisions of 28 U.S.C. § 2284(a) (stating that "[a] district court of three judges . . . shall be convened . . . when an action is filed challenging the constitutionality of . . . the apportionment of any statewide legislative body").

On April 18, this Court ordered the parties to appear at a status conference on Friday, April 22, and be prepared to discuss all matters relating to this case.  On April 29, this Court issued an order stating that it was inclined to adopt the plans passed respectively by the House and Senate during the regular 2011 session ("the 2011 Plans") as an interim remedy for the 2011 elections only.  This Court scheduled a hearing for May 10, 2011, at which counsel for the parties were invited to present their views, comments, and objections to this

8

proposed remedy.  At the hearing on May 10, we received documentary evidence and heard testimony, comments, objections, and arguments of counsel, in response to our April 29 order.  In the light of the testimony and statements of counsel at the status conference and May 10 hearing, and based on our review of the pleadings and motions, we understand the parties' positions to be as follows.

The Plaintiffs seek a declaratory judgment that the current Mississippi House and Senate districts are unconstitutionally malapportioned, and an injunction prohibiting use of those districts in the 2011 elections.  They have asked that we order the Mississippi Attorney General to submit the 2011 Plans to the United States Attorney General for preclearance and order those plans to be used, as an interim remedy, for the 2011 elections.[2]  The Plaintiffs acknowledge that, as a last resort, this Court may utilize the current districts as an interim remedy.  However, they argue that if that happens, new elections must be ordered within a year.

Secretary of State Hosemann filed a motion to dismiss the complaint on the ground that it is premature, because, as we have said, the Mississippi Constitution allows the State until the end of the 2012 legislative session to complete redistricting of the Legislature. Although Secretary of State Hosemann does not dispute that the current legislative districts are malapportioned based on the 2010 census data, he argues that the State may nevertheless constitutionally use those districts for the 2011 elections.  Intervenors Bondurant, Currie, and Stevens joined the Secretary of State's motion to dismiss.

The Republican Party and Governor Barbour argue that we should not enjoin use of the current districts unless we appoint an expert to draw a court-ordered plan for use in the

_____

[2]  Although in their complaint the Plaintiffs alleged claims for racial discrimination in violation of the Equal Protection Clause, for violation of Sections 2 and 5 of the Voting Rights Act, and for violation of the Mississippi Constitution, at the status conference on April 22, counsel for the Plaintiffs stated that there is no Section 2 claim in this lawsuit and that this is only a "one-person, one-vote" case.  The Plaintiffs' counsel stated that the House and Senate Plans passed in 2011 would satisfy Section 2 and not be retrogressive.  The Plaintiffs' request for a temporary restraining order until a three-judge panel could be convened, made in their complaint and in a separate motion filed on March 29, is moot.

2011 elections.  The Republican Party has also submitted its own proposed plan ("the One Percent Plan"), to which the Plaintiffs and others have objected. Further, the Republican Party and Governor Barbour object to use of the 2011 Plans as an interim remedy.  They argue that those plans were not passed in accordance with State policy, as reflected in the Mississippi Constitution and statutes.  They also argue that the plans are not constitutional under the stricter standards of population equality applicable to court-ordered plans.  Finally, they contend that the plans systematically underpopulate districts currently represented by Democrats and systematically overpopulate districts currently represented by Republicans, and consequently are unconstitutional. *See Larios v. Cox*, 300 F.Supp.2d 1320 (N.D. Ga.), *summarily aff'd*, 542 U.S. 947 (2004) (holding that legislative plan with total population deviation of 9.98 percent was unconstitutional where certain districts were systematically underpopulated purely for partisan advantage).

Senator Burton argues that this Court should defer to the legislative process and use the 2011 Senate Plan as a component of any interim remedy if no joint resolution is adopted before June 1.   He contends that the law does not require preclearance of a plan selected as an interim remedy, as opposed to a permanent one.  Although he takes no position with respect to the 2011 House Plan, his counsel stated that he believed the same arguments apply to both the 2011 House and Senate Plans.

Attorney General Hood, the Democratic Party, and the Senate Democratic Caucus and Individual Mississippi Democratic Senators have asked us to impose the 2011 House and Senate Plans as an interim remedy.  It is not entirely clear whether all of these parties support the use of House Consensus 1 or House Consensus 2, although all of these parties apparently take the position that either of the 2011 House Plans is preferable to any other remedy. Counsel for the Plaintiffs stated that the Plaintiffs favor the second plan passed by the House in 2011 (House Consensus 2), because it splits fewer precincts.

Counsel for Intervenor, the House Apportionment and Elections Committee, stated at both the status conference and the May 10 hearing that there is a threshold question

10

whether a state or local government is required to redistrict in the year that census data becomes available, but he took no position on the issue. He stated that the House Committee does not have any objection to the use of the 2011 Plans and that a special election would not be required if this Court adopted those plans as interim plans, because they satisfy the Voting Rights Act and the one-person, one-vote requirement, and there is no retrogression. Counsel, taking no position whether the Legislature must be reapportioned this year, stated that the 2011 Plans should be submitted for preclearance in the event that this Court adopts them as an interim remedy. Counsel stated that if the Legislature is not required to redistrict in the same year that census data become available, then the 2002 districts should be used in these elections and there would be no basis for ordering special elections. In a supplemental submission following the May 10 hearing, the House Committee, still not contending that Section 254 of the Mississippi Constitution is unconstitutional, asserted that the better course is for the court to implement the 2011 Plans as an interim remedy for this election only.

Counsel for Election Commissioner Cochran stated that the Commissioners have not taken a position on the substantive issues involved in the lawsuit.

### III.

### Discussion of Issues

This challenge to the current apportionment of electoral districts in the Mississippi Legislature arises under the Equal Protection Clause of the Constitution.[3]   "The Equal Protection Clause requires that representatives to an elected body be drawn from voting districts of substantially equal population." *Chen v. City of Houston*, 206 F.3d 502, 522 (5th Cir. 2000) (citing *Reynolds v. Sims*, 377 U.S. 533 (1964)). As we have earlier explained, all parties to this litigation agree that, based on the 2010 census data, the current apportionment scheme does not satisfy this one-person, one-vote principle. *See Reynolds*, 377 U.S. at 558. The question is whether the federal courts should impose a remedy at this time. "Simply

---

[3] An equal protection claim challenging the apportionment of seats in a state's legislature presents a justiciable controversy subject to our adjudication. *See Baker v. Carr*, 369 U.S. 186 (1962).

because an election law has become unconstitutional does not necessarily mean a federal court should step in to rewrite it." *Arrington v. Elections Board*, 173 F. Supp. 2d 856, 860 (E.D. Wis. 2001) (three-judge court).  Instead, the Supreme Court has stated that "[a]bsent evidence that [a state legislature] will fail timely to perform [its] duty, a federal court must neither affirmatively obstruct state reapportionment nor permit federal litigation to be used to impede it." *Growe v. Emison*, 507 U.S. 25, 34 (1993).  So the question arises as to whether the State has failed ". . . timely to perform its duty . . . ."

Mississippi's reapportionment policy is spelled out in Article 13, Section 254 of the Mississippi Constitution.  Section 254 requires the Legislature to reapportion its electoral districts by the end of its regular session in the second year following the 2010 decennial census.  The plain language of the Mississippi Constitution thus demonstrates that under State law the Legislature is not required to reapportion itself until its regular session in 2012.  This constitutional provision clearly expresses the State policy, and the Supreme Court of the United States has made it clear that "whenever adherence to state policy does not detract from the requirements of the Federal Constitution," a federal court should respect that state policy.  *Upham*, 456 U.S. at 41.  *Reynolds* established that "state constitutional provisions should be deemed violative of the Federal Constitution only when validly asserted constitutional rights could not otherwise be protected and effectuated."  377 U.S. at 584.  Furthermore, because "reapportionment is primarily a matter for legislative consideration and determination, . . . judicial relief becomes appropriate only when a legislature fails to reapportion according to federal constitutional requisites in a timely fashion after having had an adequate opportunity to do so."  *Upham*, 456 U.S. at 41 (internal quotation marks and citation omitted).  The central question we must therefore decide is whether, *in its application to the facts before us*, Article 13, Section 254 of the Mississippi Constitution impairs the Equal Protection Clause's principle of "one person, one vote."  We hold that it does not.

12

As Chief Justice Earl Warren established in *Reynolds v. Sims*, decennial reapportionment meets "the minimal requirements for maintaining a reasonably current scheme of legislative representation" under the Equal Protection Clause. 377 U.S. at 583–84. The Mississippi Legislature was last reapportioned in 2002, and under the State's decennial reapportionment scheme, the Legislature has one more year before reapportionment and redistricting are required by the one-person, one-vote precedents.[4]  In the wake of *Reynolds*, courts generally have accepted that some lag-time between the release of census data and the reapportionment of a state's legislative districts is both necessary and constitutionally acceptable, even when it results in elections based on malapportioned districts in the years that census data are released.  *See, e.g.*, *Fairley v. Forrest County, Mississippi*, 814 F. Supp. 1327 (S.D. Miss. 1993); *Ramos v. Illinois*, 781 F. Supp. 1353 (N.D. Ill. 1991), *aff'd*, 976 F.2d 335 (7th Cir. 1992).  Notwithstanding the contention of several parties that the release of census data in an election year triggers the requirement to reapportion in advance of that election, none of the parties has asked us to declare that Section 254 of the Mississippi Constitution violates the United States Constitution.  In the light of these considerations, we cannot conclude that a temporary delay in the implementation of new census data, as contemplated by the application of Section 254 to the facts of this case, renders the State's reapportionment policy unconstitutional.  We therefore hold that federal interference in the Mississippi legislative redistricting process is premature at this time.

Counsel for several parties seemed to suggest at the May 10 hearing that we should ignore the holding of *Reynolds*, because the case has become obsolete.  This argument has no support in Supreme Court cases, or otherwise.  *Reynolds* was cited favorably by Justice Kennedy as recently as 2006, in *League of United Latin American Citizens v. Perry*, 548 U.S. 399 (2006) ("*LULAC*"), where he said:

---

[4] As the Supreme Court observed in *Reynolds*, some deviations from the equal-population standard are constitutionally permissible, so long as they arise "incident to the effectuation of a rational state policy." 377 U.S. at 579.  None of the parties assert that the policy embodied in Section 254 is not rational.

> Appellants do not contend that a decennial redistricting plan would violate equal representation three or five years into the decade if the State's population had shifted substantially.  *As they must*, they concede that States operate under the legal fiction that their plans are constitutionally apportioned *throughout the decade*, a presumption that is *necessary* to avoid constant redistricting, with accompanying costs and instability.  See *Georgia v. Ashcroft*, 539 U.S. 461, 488 n. 2, 123 S.Ct. 2498, 156 L.Ed.2d 428 (2003); *Reynolds*, 377 U.S., at 583, 84 S.Ct. 1362.

*Id*. at 421 (plurality opinion of Kennedy, J.) (emphasis added).

We heard further arguments that *Reynolds* has been undermined by the Supreme Court's statement in *Georgia v. Ashcroft*, 539 U.S. 461, 488 n.2 (2003), that "[w]hen the decennial census numbers are released, States must redistrict to account for any changes or shifts in population" and that "if the State has not redistricted in response to the new census figures, a federal court will ensure that the districts comply with the one-person, one-vote mandate before the next election."  This statement must be placed in context.  As an initial matter, we note that this same footnote was cited, along with *Reynolds*, in Justice Kennedy's opinion in the *LULAC* case, quoted above.  Furthermore, *Georgia v. Ashcroft* involved an appeal from a denial of Section 5 preclearance, and the footnote at issue was in response to the dissent's rejection of "any inquiry into the benchmark plan using the census numbers in effect at the time the redistricting plan was passed."  539 U.S. at 488 n.2.  The Court did not hold that a state must redistrict to account for changes or shifts in population in the same year that census numbers are released, nor did it hold that a state's plan for decennial reapportionment would not be adequate to maintain a reasonably current scheme of legislative representation.  Indeed, the Court in *Georgia v. Ashcroft* recognized that states operate under the legal fiction that plans are constitutionally apportioned for ten years.  539 U.S. at 488 n.2.[5]  The Supreme Court has made it very clear that lower courts "should follow

---

[5] None of the other cases cited to us suggests that we are not bound to follow *Reynolds*.  *McDaniel v. Sanchez*, 452 U.S. 130 (1981), presented the question whether a reapportionment plan submitted to a district court by a legislative body to remedy an unconstitutional apportionment must be precleared.  *Id*. at 131–32.  *McDaniel* certainly did not overrule, nor did it undermine *Reynolds*.  *Wyche v. Madison Parish*

the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989). We therefore are compelled to follow *Reynolds* until it is overruled by the Supreme Court of the United States.

---

*Police Jury*, 635 F.2d 1151 (5th Cir. 1981), does not support an argument that a state legislature must act within six months after receiving census data. In that case, the six-month deadline from receipt of census data was derived from a state statute. *Id*. at 1157. Finally, our decision is not inconsistent with *Watkins v. Mabus*, 771 F. Supp. 789 (S.D. Miss.) (three-judge court), *aff'd in part and vacated in part*, 502 U.S. 954 (1991), because the court in *Watkins* was not presented with the question whether Article 13, Section 254 of the Mississippi Constitution required the court to stay its hand.

## IV.

### Conclusion

We retain jurisdiction of this case to order appropriate relief, including special elections, if appropriate, upon motion of any party, following completion—or failure—of the process for redistricting of the Mississippi Legislature prescribed by Article 13, Section 254 of the Mississippi Constitution.[6]  If a legislative reapportionment plan is adopted by the end of the 2012 session, in accordance with Section 254 of the Mississippi Constitution, and that plan is precleared by the Department of Justice or the United States District Court for the District of Columbia, this Court, upon motion of any party, will consider whether special elections are required using such a plan.  Any such motions must be filed no later than 30 days after the Mississippi Attorney General receives official notification of preclearance from the Department of Justice.  The Mississippi Attorney General is ordered to file a notice with this Court, copying all counsel, upon receipt of such official notification from the Department of Justice.  If no party moves for a special election within 30 days of notification of preclearance, a final judgment shall be entered at that time.

If at the end of the process prescribed by the Mississippi Constitution, there is no plan that has been adopted in accordance with State law and precleared as required by Section 5 of the Voting Rights Act, the Mississippi Attorney General shall promptly notify this Court.

---

[6] By retaining jurisdiction rather than dismissing the case as unripe, we act consistently with what the Supreme Court required in *Growe v. Emison*, 507 U.S. at 34  (stating that "reapportionment is primarily the duty and responsibility of the State through its legislature or other body, rather than of a federal court" and that "[a]bsent evidence that these state branches will fail *timely* to perform that duty, a federal court must neither affirmatively obstruct state reapportionment nor permit federal litigation to be used to impede it") (internal quotation marks and citation omitted; emphasis added).  We also act consistently with what was done in *Smith v. Clark*, 189 F. Supp. 2d 503, 504 (S.D. Miss. 2002) (three-judge court), where the court deferred acting in order to give State authorities an opportunity to timely carry out their duty to reapportion Mississippi's congressional districts.  The Supreme Court approved that practice, stating that "unlike in *Growe*, there is no suggestion that the District Court failed to allow the state court adequate opportunity to develop a redistricting plan."  *Branch v. Smith*, 538 U.S. 254, 262 (2003).  *See also Arrington v. Elections Board*, 173 F. Supp. 2d at 862–67 (discussing ripeness in redistricting cases and noting that "previous courts faced with arguably premature redistricting lawsuits have retained jurisdiction, but entered stays so the state legislatures could act").

This Court shall then schedule hearings and proceed to draw a new plan. That plan will then be in effect until the Legislature passes a plan that is precleared in accordance with Section 5 of the Voting Rights Act.

Finally, we observe that our order today seems to comport with everyone's "second choice." That—perhaps irrelevant—point aside, we are certain that it is the most respectful of all proposals to the principles of federalism, to the unchallenged laws of the State of Mississippi, to the holdings of the Supreme Court of the United States, and to the proper placement of responsibility for reapportionment—the Legislature of the State of Mississippi. The Legislature can adopt a plan and seek to have it precleared prior to the June 1 qualifying deadline for the 2011 elections; or the 2011 elections can go forward in the present districts as scheduled. The 2012 Legislature then can try to craft a plan that can be passed by joint resolution, in accordance with Mississippi law and the United States Constitution's principle of one person, one vote. If the process for redistricting set out in the Mississippi Constitution results in the enactment of a plan that is precleared and no party requests special elections, this Court will have no further involvement or duty. Our duty to act will arise only if that process fails. We retain jurisdiction, not in the expectation of failure, but only so that we may do our limited duty if we must.

We reiterate: Absent a plan adopted by the Mississippi Legislature and precleared by the Justice Department, the elections in 2011 for the Senate and House of Representatives of the State of Mississippi will be conducted under the districts as they are presently configured. This Court retains jurisdiction of this case as noted above.

SO ORDERED, this 16th day of May, 2011.


/s/ E. Grady Jolly
E. Grady Jolly
United States Circuit Judge

17

/s/ Tom S. Lee
Tom S. Lee
United States District Judge


/s/ Louis Guirola, Jr.
Louis Guirola, Jr.
Chief United States District Judge