IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**MISSISSIPPI STATE CONFERENCE OF THE**                                               **PLAINTIFFS**
**NATIONAL ASSOCIATION FOR THE ADVANCEMENT**
**OF COLORED PEOPLE, THOMAS PLUNKETT, ROD**
**WOULLARD, and HOLLIS WATKINS,** on behalf of themselves
and all others similarly situated

**VS.**                                      **CIVIL ACTION NO. 3:11-cv-159TSL-EGJ-LG-MTP**

**HALEY BARBOUR,** in his official capacity as
Governor of the State of Mississippi, **JIM HOOD,**
in his official capacity as Attorney General of the
State of Mississippi, and **DELBERT HOSEMANN,**
in his official capacity as Secretary of State of the
State of Mississippi, as members of the State Board
of Election Commissioners; **THE MISSISSIPPI**
**REPUBLICAN PARTY EXECUTIVE COMMITTEE;**
**THE MISSISSIPPI DEMOCRATIC PARTY EXECUTIVE**
**COMMITTEE; and CONNIE COCHRAN,** in her official
capacity as Chairman of the Hinds County, Mississippi
Board of Election Commissioners, on behalf of herself
and all others similarly situated                                           **DEFENDANTS**

**AND**

**APPORTIONMENT AND ELECTIONS COMMITTEE**
**OF THE MISSISSIPPI HOUSE OF REPRESENTATIVES;**
**MISSISSIPPI STATE SENATE DEMOCRATIC CAUCUS**
**AND STATE DEMOCRATIC SENATORS,** in their individual
capacities; **TERRY C. BURTON, SIDNEY BONDURANT,**
**BECKY CURRIE, and MARY ANN STEVENS**                                  **INTERVENORS**

**PLAINTIFFS' MOTION TO AMEND**
<u>**MEMORANDUM OPINION AND ORDER [DOC. 124]**</u>

      COME NOW the plaintiffs, the Mississippi State Conference of the National Association for

the Advancement of Colored People ("NAACP"), Thomas Plunkett, Rod Woullard, and Hollis

Watkins, on behalf of themselves and all others similarly situated,[1] pursuant to Fed. R. Civ. P. 59(e), and move the Court to amend the Memorandum Opinion and Order [Doc. 124] entered by the Court on May 16, 2011 on grounds that the Memorandum Opinion and Order contains a manifest error of law. This motion to amend the Memorandum Opinion and Order sets forth the standard of review, the facts upon which the manifest error of law is based, a statement of the manifest error of law and argument, and a conclusion.

## THE STANDARD OF REVIEW

A motion to amend or alter "the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and cannot be used to raise argument which could, and should, have been made before the judgment issued.'" *Rosenblatt v. United Way of Greater Houston*, 607 F. 3d 413, 419 (5th Cir. 2010), quoting, *Simon v. United States*, 891 F. 2d 1154, 1159 (5th Cir. 1990). The Court may, and should, revise its ruling if, as here, it is "based on an incorrect view of the law or on a clearly erroneous assessment of the evidence." *In re: Blast Energy Services, Inc.*, 593 F. 3d 418, 423 (5th Cir. 2010). Plaintiffs do not raise any new arguments that were not presented to the Court before the Memorandum Opinion and Order were entered. Rather, the motion seeks to bring to the Court's attention the Court's incorrect view of the law and the Order which evinces a manifest error of law.

## THE FACTS UPON WHICH THE MANIFEST ERROR OF LAW ARE BASED

The facts upon which the manifest error of law are based are as follows:

1.  The Mississippi Legislature adopted and obtained preclearance of the present

---

[1] Plaintiffs filed the case as a class action. However, plaintiffs have not filed a formal motion for class certification yet.

apportionment scheme in 2002.[2]

2. The Mississippi reapportionment policy as spelled out in Article 13, Section 254 of the Mississippi Constitution provides that the Legislature shall "reapportion its electoral districts by the end of its regular session in the second year following the 2010 decennial census."[3] [Memorandum Opinion, p. 12].

3. The United States Supreme Court in *Reynolds v. Sims*, 377 U. S. 533, at 583-584 (1964), indicated that decennial redistricting "would clearly meet the minimal requirements for maintaining a reasonably current scheme of legislative representation."

4. The Mississippi Legislature last reapportioned in 2002 and that reapportionment scheme is constitutionally valid for 10 years or until 2012.

5. In order to successfully challenge the 2002 apportionment scheme, the plaintiffs must request the Court "to declare that Section 254 of the Mississippi Constitution violates the United States Constitution."[4] [Memorandum Opinion, p. 13].

---

[2]The present apportionment scheme for the Mississippi House of Representatives is codified at § 5-1-1, Miss. Code Ann. (Supp. 2010). The present apportionment scheme for the Mississippi Senate is codified at § 5-1-3, Miss. Code Ann. (Supp. 2010). The historical and statutory notes to both code sections indicate that the United States Attorney General precleared the scheme on June 17, 2002 and amendments to the code sections on July 29, 2002.

[3]A salient fact not addressed by the Court is that Article 13, Section 254 of the Mississippi Constitution allows the Legislature to reapportion at any time.

[4]The Court held:

> Notwithstanding the contention of several parties that the release of census data in an election year triggers the requirement to reapportion in advance of that election, none of the parties has asked us to declare that Section 254 of the Mississippi Constitution violates the United States Constitution. In the light of these considerations, we cannot conclude that a temporary delay in the implementation of new census

6. The release of the 2010 census data to the State of Mississippi showing that legislative districts are grossly malapportioned does not require redistricting before the 2011 legislative elections even though plaintiffs challenged the constitutionality of those districts prior to Mississippi's election machinery going into effect for the elections.

## **THE MANIFEST ERRORS OF LAW**

The Court's Opinion contains several manifest errors of law. One manifest error of law is the Court's decision that in order for the plaintiffs to successfully challenge the constitutionality of the current legislative apportionment scheme they must challenge the state constitutional policy which authorizes the scheme. That is a manifest error of law. Plaintiffs challenged the constitutionality of the current statewide legislative apportionment scheme. That scheme is embodied in two statutes, § 5-1-1, Miss. Code Ann. (Supp. 2010) and § 5-1-3, Miss. Code Ann. (Supp. 2010). In essence, the plaintiffs challenge the constitutionality of the state statutes upon which the apportionment scheme is based. The United States Supreme Court has held that voters may challenge the constitutionality of a particular legislative district although the state policy upon which that district is drawn is not unconstitutional. *Whitcomb v. Chavis*, 403 U. S. 124 (1971). In *Whitcomb*, the state policy upon which reapportionment was based allowed multi-member districts. Plaintiffs challenged the state policy as being unconstitutional and certain districts as discriminatory. The Supreme Court did not find that multi-member districts per se were unconstitutional. However,

---

> data, as contemplated by the application of Section 254 to the facts of this case, renders the State's reapportionment policy unconstitutional. We therefore hold that federal interference in the Mississippi legislative redistricting process is premature at this time.

[Memorandum Opinion, p. 13].

the Court held that districts where the maximum population variance according to the most recent census was 28.20% were unconstitutional. The Supreme Court specifically held:

> Nor can we accept defendant's argument that the statutory plan was beyond attack because the District Court had held in 1965 that at that time the plan met the 'substantial equality' test of Reynolds. Stout v. Bottorff, 249 F. Supp. 488 (SD Ind. 1965). Defendant does not argue that the 1969 variances were acceptable under the Reynolds test, which has been considerably refined since that decision, see Swann v. Adams, supra. Rather he contends that because Reynolds indicated that decennial reapportionment would be a 'rational approach' to the problem, a State cannot be compelled to reapportion itself more than once in a 10-year period. Such a reading misconstrues the thrust of Reynolds in this respect. Decennial reapportionment was suggested as a presumptively rational method to avoid 'daily, monthly, annual or biennial reapportionment' as population shifted throughout the State.
>
> Here, the District Court did not order reapportionment as a result of population shifts since the 1965 Stout decision, but only because the disparities among districts which were thought to be permissible at the time of that decision had been shown by intervening decisions of this Court to be excessive.

*Whitcomb v. Chavis*, supra, at 162-163. In *Sixty-Seventh Minnesota State Senate v. Beens*, the Supreme Court held that mid-decade judicial relief is appropriate where new census data show that the existing apportionment scheme to be unconstitutional *Sixty-Seventh Minnesota State Senate v. Beens*, 406 U. S. 187 (1972). The Supreme Court held:

> The 1996 Minnesota apportionment legislation, the court found, in the light of the 1970 census figures no longer provided a constitutionally acceptable apportionment of either house. No one challenges that basic finding here, and we have no reason to rule otherwise. The 1971 legislature had endeavored to reapportion, and, thus to fulfill the requirement imposed upon it by Art. IV, s 23, of the State's Constitution. See Magraw v. Donovan, 163 F. Supp. 184, 187-188 (D. Minn. 1958), and Honsey v. Donovan, 236 F. Supp. 8 (D. Minn. 1964). The legislature's efforts in that

> direction, however, were nullified by the Governor's veto of the Act it passed, an action the executive had the power to take. Duxbury v. Donovan, 272 Minn. 424, 138 N. W. 2d 692 (1965). The net result was the continuing applicability of the 1966 act. Under these circumstances judicial relief was appropriate.

*Sixty-Seventh Minnesota State Senate v. Beens*, supra, at 195.

A second manifest error of law is that there is an irrefutable presumption that a legislative redistricting plan is constitutionally valid for a full 10-year period. The Supreme Court in *Sixty-Seventh Minnesota State Senate v. Beens* held that the 10-year presumption of validity of a redistricting plan is a rebuttable presumption. *Id.* The Court made a similar ruling in *Whitcomb v. Chavis*. See, *Whitcomb v. Chavis*, supra, at 162-163. Likewise, in *Georgia v. Ashcroft*, the Supreme Court opined that the legal fiction that an apportionment scheme is constitutionally valid for a 10-year period disappears when new census data is released showing the scheme is malapportioned. *Georgia v. Ashcroft*, 539 U. S. 461, 488, fn. 2 (2003).[5] The Court held:

> When the decennial census numbers are released, States must redistrict to account for any changes or shifts in population. But before the new census, States operate under the legal fiction that even 10 years later, the plans are constitutionally apportioned. After the new enumeration, no districting plan is likely to be legally enforceable if challenged, given the shifts and changes in a population over 10 years. And if the State has not redistricted in response to the new census figures, a federal court will ensure that the districts comply with the one-person, one-vote mandate before the next election.

*Georgia v. Ashcroft*, supra, at 488, fn. 2. This Court did not find this statement of the law persuasive

---

[5]The Mississippi Republican Party Executive Committee ("Republican Party") filed a response to the Court's Order indicating the Court would implement an interim remedy. [Doc. 102]. The Republican Party cited and quoted *Georgia v. Ashcroft*, supra, at 488, fn. 2, in arguing that a remedy is required because the 2010 census establishes the malapportionment of the legislative districts. The plaintiffs agreed with that argument on that point of law.

6

because *Georgia v. Ashcroft* was a § 5[6] case as opposed to a malapportionment case. This Court, however, found in Justice Kennedy's opinion in *League of United Latin American Citizens v. Perry*, 548 U. S. 399 (2006) ("*LULAC*") persuasive. However, the plaintiffs' challenge was whether the Texas Legislature could redistrict mid-decade before the new census data was released. That case did not challenge existing malapportioned districts after the census data had been released. Furthermore, Justice Kennedy's opinion in *Lula* was a plurality opinion joined by Justices Souter, Ginsburg, and Stevens. Ironically, Justices Souter, Stevens, Ginsburg, and Breyer dissented in *Georgia v. Ashcroft*, supra, at 491-509, where they questioned whether an existing plan could be reviewed or challenged after new census data was released. Justice O'Connor, in an opinion joined by Chief Justice Rehnquist and Justices Scalia, Kennedy, and Thomas, held that "[w]hen the decennial census numbers are released, States must redistrict to account for any changes or shifts in population." *Georgia v. Ashcroft*, supra, at 488, fn. 2. The majority went on to hold that "States operate under the legal fiction that even 10 years later, the plans are constitutionally apportioned." *Id.* However, the majority noted that "[a]fter the new enumeration, no districting plan is likely to be legally enforceable if challenged, given the shifts and changes in a population over 10 years." *Id.* Importantly, if pre-election relief is sought, "a federal court will ensure that the districts comply with the one-person, one-vote mandate before the next election." *Id.* The *Georgia v. Ashcroft* opinion is a majority opinion whereas the *LULAC* opinion is a plurality opinion.

     A third manifest error of law is that the Court's indication that if the Legislature remedies the malapportionment, elections could be held in 2012. The Supreme Court has held and this Court has recognized that the federal courts should follow state policy whenever possible in implementing

---

[6] 42 U. S. C. § 1973c.

a remedy to malapportioned districts. *Upham v. Seamon*, 456 U. S. 37 (1982). If the Legislature remedies the malapportionment by passing plans, then those plans would not go into effect until 2015. If this Court defer to the Legislature until the end of the 2012 legislative session, and then implement a remedy, that remedy would not go into effect until 2015. The only elections set by statute between 2011 and 2015 are federal elections and elections for state judges. Those federal and judicial elections are scheduled for 2012. The presidential preference primary and congressional primary elections are scheduled for Tuesday, March 13, 2012. §§ 23-15-1031 and 1081, Miss. Code Ann. (1972). The candidate qualification deadline for congressional candidates is Friday, January 13, 2012. §§ 23-15-1031 and 1081, Miss. Code Ann. (1972). A general election is scheduled for Tuesday, November 6, 2012. § 23-15-1033, Miss. Code Ann. (1972). State judicial elections are nonpartisan. §§ 23-15-976, Miss. Code Ann. (1972). Judicial elections will be held November 6, 2012. The legislative session in 2012 is a 125 day session which begins Tuesday, January 3, 2012 and ends Monday, May 7, 2012. Article 4, Section 36, Miss. Const. (1890). The Court indicated in its conclusion that, according to Article 13, Section 254 of the Mississippi Constitution, the Legislature would have until the end of the 2012 session, May 7, 2012, to enact reapportionment plans. [Memorandum Opinion, p. 16]. The Court also indicated that it would not order special elections until after a party has filed a request "no later than 30 days after the Mississippi Attorney General receives official notification of preclearance from the Department of Justice." [Memorandum Opinion, p. 16]. If special elections are ordered, then those elections are likely to be held on November 6, 2012 and be nonpartisan.[7] Special court-ordered nonpartisan legislative

---

[7] Special elections to fill legislative vacancies are set by the Governor. § 23-15-851, Miss. Code Ann. (1972). However, any special election ordered by the Court will not be to fill vacancies but to remedy malapportionment. In that regard, the Court must follow the state policy

elections would intrude unnecessarily upon state policy for legislative elections. That policy provides for partisan primary elections and a general election. Voters are familiar with primary and general election dates, and voters are more likely to participate in legislative elections if they are held in conjunction with statewide elections or federal elections. Furthermore, it would be inconsistent with Supreme Court precedent to deny voters the right to vote in properly apportioned legislative districts for a period of three years after the districts have been declared malapportioned. The Supreme Court has held:

> We have no occasion to review the District Court's determination that the legislative reapportionment plan fails to meet constitutional standards. Indeed, Florida does not contend that the District Court erred in this regard, having conceded below that the plan was constitutionally deficient. We hold, however, that in approving the plan on an interim basis, the District Court erred.... While recognizing the desirability of permitting the Florida Legislature itself to determine the course of reapportionment, we find no warrant for perpetuating what all concede to be unconstitutional apportionment for another three years.

*Swann v. Adams*, 383 U. S. 210, 211-212 (1966) (per curiam). There is no rational reason in this case for" perpetuating what all concede to be unconstitutional apportionment for another three years."[8] *Id*. Therefore, legislative elections should not be delayed until 2015 and they should not

---

choices for elections. *Upham v. Seamon*, supra. Those policy choices are for legislative offices to be filled by political party primaries and a general election. Any special nonpartisan election would be an unprecedented intrusion into and trampling of state policy choices for legislative elections.

[8]This Court in footnote 8 indicated that the Court was doing what was done in *Smith v. Ckark* where the Court deferred to the Legislature to give state officials the opportunity to reapportion congressional districts. However, the Court, in *Smith v. Clark* only gave the Legislature until the first week of the next session to reapportion before the Court decided to step in. *Smith v. Clark*, 189 F. Supp. 2d 503 (S. D. Miss. 2002) (three-judge court). The Court indicated that it was setting a quick deadline so that districts could be in place by the time of the upcoming elections. If the Court determines that it will not use the 2011 plans passed by each

be held as special nonpartisan elections in November, 2012.[9]

**WHEREFORE, PREMISES CONSIDERED**, plaintiffs respectfully request the Court to amend and alter the Memorandum Opinion and Order by declaring the present apportionment scheme to be unconstitutionally malapportioned based on the 2010 census and ordering use the 2011 Senate plan and 2011 House Consensus 2 plan as interim remedies for the 2011 legislative elections, extend the candidate qualification deadline until June 15, 2011. As a last resort, if the Court elects not to implement the 2011 legislative plans but still defer to the Legislature to remedy the malapportionment and allow elections to proceed under the 2011 plan, then plaintiffs request the Court to give the Legislature until January 6, 2012 to remedy the malapportionment and schedule elections to coincide with the 2012 primary and general election schedule.

---

House of the Legislature, but still defer to the Legislature to remedy the malapportionment, the Court should set the deadline at January 6, 2012 - one week before the 2012 candidate qualification deadline.

[9]Judicial elections are nonpartisan and will be held in November, 2012.

Since the authorities for this motion are contained herein, plaintiffs request leave of court from the requirement of filing a separate memorandum of authorities.

Plaintiffs also request an expedited ruling on this motion.

This the 20th day of May, 2011.

                                        Respectfully submitted,
MISSISSIPPI STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, THOMAS PLUNKETT, ROD WOULLARD, and HOLLIS WATKINS, on behalf of themselves and all others similarly situated

*/s/ Carroll Rhodes*
CARROLL RHODES, ESQ., MSB # 5314
LAW OFFICES OF CARROLL RHODES
POST OFFICE BOX 588
HAZLEHURST, MS 39083
TEL.: (601) 894-4323
FAX: (601) 894-1464
e-mail: crhode@bellsouth.net

**CERTIFICATE OF SERVICE**

    I, Carroll Rhodes, do hereby certify that I have this date electronically filed the foregoing Motion with the Clerk of Court using the ECF system which sent notification of such filing to the following:

Michael B. Wallace, Esq.  
mbw@wisecarter.com

Charles Stevens Seale, Esq.  
css@wisecarter.com

Samuel L. Begley, Esq.  
sbegley1@bellsouth.net

Robert B. McDuff, Esq.  
rbm@mcdufflaw.com

Harold Pizetta, Esq.  
hpizz@ago.state.ms.us

Justin L. Matheny, Esq.  
jmath@ago.state.ms.us

Crystal Martin, Esq.  
cmartin@co.hinds.ms.us

Jack L. Wilson, Esq.  
jwilson@babc.com

Stephen Lee Thomas, Esq.  
sthomas@babc.com

Robert L. Gibbs, Esq.  
rgibbs@brunini.com

Matthew W. Allen, Esq.  
mwallen@brunini.com

John F. Hawkins, Esq.  
john@hsglawfirm.net

Cory T. Wilson, Esq.  
cory@wlglegal.com

This the 20th day of May, 2011.

                                            */s/ Carroll Rhodes*  
                                            CARROLL RHODES